[No. 33419.   Department Two.   April 26, 1956.]

HANSEN BAKING CO., *Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

[1]Reported in 296 P. (2d) 670.

*A. C. Van Soelen* and *C. V. Hoard,* for appellants.

*F. A. LeSourd, Griffith Way, Brockman Adams,* and *Little, LeSourd, Palmer, Scott & Slemmons,* for respondent.

HAMLEY, C. J.—In this action, Hansen Baking Co., Inc., seeks a refund of excise taxes, penalties, and interest paid to the city of Seattle as a result of a delinquency assessment. Judgment was entered for plaintiff. Defendants appeal.

The pertinent facts are not in dispute. Respondent is engaged in the business of manufacturing bread within the

city of Seattle and selling this product both within and without the city. The manufacturing operation ends when the bread is placed on the loading dock of respondent's plant in Seattle. Some of the bread is then sold, at the loading dock, to independent commission men, who, in turn, sell at wholesale to their own customers. Commission men who distribute such products outside the city purchase the bread at seventy-two and one half per cent of the wholesale price.

Some of the bread, however, is transported from the plant in respondent's trucks, or by common carrier, and sold at wholesale by respondent within or without the city. The question before us pertains to the computation of the city's business and occupation tax on that part of respondent's activity which consists of the manufacture of bread which is thereafter transported out of the city, by or for respondent, without prior sale.

The taxing ordinance (Seattle Ordinance No. 72630), which was enacted in 1943, contains these provisions:

"Section 3. On and after the first day of July, 1943, . . . there is hereby levied upon, and shall be collected from . . . every person on account and for the privilege of engaging in business activities, a license fee or occupation tax, sometimes herein referred to as the 'tax', in amounts to be determined by application of rates given against value of products, gross proceeds of sale, or gross income of business, as the case may be. . . .

"(b) Upon every person engaging within this city in business as a manufacturer; as to such persons the amount of tax with respect to such business shall be equal to the value of the products manufactured, multiplied by the rate of one-tenth of one percent;

"The measure of the tax is the value of the product so manufactured, regardless of the place of sale or the fact that the deliveries may be made to points outside the city.

"Section 5. DETERMINATION OF VALUES: The value of products extracted or manufactured shall be determined by the gross proceeds derived from the sale thereof, whether such sale is at wholesale or at retail, except:

"(a) Where such products are extracted or manufactured for commercial use;

"(b) Where such products are shipped, transported or

transferred out of the city, or to another person, without prior sale or are sold under circumstances such that the gross proceeds from the sale are not indicative of the true value of the subject-matter of the sale.

"In the above cases the value shall correspond as nearly as possible to the gross proceeds from sales in this city of similar products of like quality and character, and in similar quantities by other taxpayers. The Comptroller shall prescribe uniform and equitable rules for the purpose of ascertaining such values."

On September 24, 1943, the comptroller of the city of Seattle sent a letter to the Seattle Bakers' Bureau, reading in part as follows:

"Referring to conference in the City Comptroller's office with representatives of the baking industry, on September 10, 1943, regarding value of products manufactured in Seattle but shipped out to surrounding cities for sale:

"It will be acceptable to this office to use the same method of arriving at the value of such products as has been set up by the state in arriving at value of products shipped out of the state, which we understand to be either cost, or not less than 70% of the usual selling price."

Respondent considered this letter, which has never been rescinded, as an administrative ruling. In computing the tax due on its activity of manufacturing bread which it thereafter sold at wholesale outside the city, respondent accordingly measured the value of such products by the cost of manufacture. This course was followed by respondent during the tax years in question, 1948 through 1952. The cost of manufacture, or "cost to door," as it is referred to in the record, approximates sixty-five to sixty-seven per cent of the wholesale price in Seattle.

In 1953, a city tax accountant commenced an audit of respondent's business tax returns. This was the first time that the books of any firm engaged in this kind of a baking and wholesaling operation had been audited since the tax became effective ten years before.

As a result of this audit, the city, on March 3, 1953, assessed a deficiency for the years 1948 through 1952. The basis of this assessment was that the value of the products

so manufactured and sold should have been measured not by the cost of manufacture, but by the gross proceeds realized from selling the bread at wholesale outside the city. The city used this measure of value, rather than the gross proceeds "from sales in this city," as specified in the ordinance, because it found the wholesale price of bread within and without the city to be identical.

Respondent paid the deficiency tax with penalties and interest in the sum of $935.36, and then brought this action for a refund. As before indicated, the trial court entered judgment for respondent baking company.

The judgment for respondent is predicated upon a finding of fact that the city comptroller's letter of September 24, 1943, constituted a ruling that, with respect to the activity in question, it would be acceptable to use either cost or not less than seventy per cent of the usual selling price.

Appellants question this finding of fact. They call attention to the fact that the second paragraph of that letter states that it would be acceptable to use the same method of arriving at the value of such products "as has been set up by the state" in arriving at value of products shipped out of the state. It is argued that the value used by the state was "the gross proceeds from sales in this state of similar products of like quality and character." Hence, it is contended that the city comptroller's letter authorized only that method of measuring value.

Had the paragraph in question closed with the reference to the "same method" as had been set up by the state, the purport of the ruling would depend upon ascertainment of the state method. And if it was then established, as appellants assert, that the state method did not permit measurement of value by cost, the finding of fact that the ruling permitted cost measurement would be clearly wrong.

This paragraph of the September 24, 1943, letter, however, did not close with a general reference to the state method. It continued: ". . . which we understand to be either cost, or not less than 70% of the usual selling price."

In our view, the words last quoted relieved affected taxpayers of the necessity of ascertaining the actual state

method. They were told, in effect, that the city had ascertained the state method and that it permitted cost valuation. Taxpayers would reasonably understand from this statement, and respondent did so understand, that it was permissible to use the cost method.

We therefore sustain the finding of fact that the letter constituted a ruling that it was acceptable to use cost in measuring the value of products transported out of the city without prior sale.

If this ruling resulted from a misunderstanding of the state method by the city, that circumstance would not militate against the finding that such a ruling was made. Rather, it would go to the question of whether an administrative agency may retroactively abrogate or disregard a regulation on the ground that it resulted from an error of fact by the agency. This question, but with reference to another asserted error of fact, is dealt with and answered below.

■ Appellants next argue that the ruling of the city comptroller, that value could be ascertained by the cost method, is invalid because it is in conflict with the taxing ordinance and is unreasonable.

Concerning the asserted conflict between the ruling and the taxing ordinance, appellants invoke the rule that an administrative agency may not, by means of an interpretation or clarifying regulation, actually modify or amend the legislative enactment. *Fisher Flouring Mills Co. v. State,* 35 Wn. (2d) 482, 492, 213 P. (2d) 938.

Whether the administrative ruling here under examination modifies or amends the legislative enactment depends upon the meaning to be attached to section 5 (b) of the ordinance. This subsection provides, among other things, that where the products are transported out of the city without prior sale,

". . . the value shall correspond *as nearly as possible* to the gross proceeds from sales in this city of similar products of like quality and character, and in similar quantities by other taxpayers. The Comptroller shall prescribe uniform and equitable rules for the purpose of ascertaining such values." (Italics ours.)

Under this subsection, the city comptroller is required to make fact determinations and exercise judgment and discretion. He must find among sales within the city the closest parallel to the quality, character, and quantity of products transported out of the city without prior sale. He must then formulate "uniform and equitable" rules under which the value of the transported products may be measured "as nearly as possible" by the gross proceeds of this most nearly similar class of transactions within the city.

The words "as nearly as possible" plainly suggest that, under a particular factual showing, or in view of particular equitable considerations, it may not be appropriate to use the gross proceeds of any city transaction as a measure of the value of products transported out of the city without prior sale. In such an event, the city comptroller is, we believe, authorized to formulate some other method of measuring value which is uniform and equitable, and which, in his judgment, comes as nearly as possible to corresponding to the gross proceeds of some city transaction.

The administrative ruling prescribed in the letter of September 24, 1943, represents an instance in which the city comptroller found and determined that some measure of value other than gross proceeds was necessary. He held, in effect, that, under the facts which he found to exist and the associated equities, the value which as nearly as possible corresponds to the gross proceeds from the closest parallel sale within the city is the cost of manufacture. In our opinion, this ruling was of a kind which the city comptroller was authorized to make, and it is therefore not in conflict with the taxing ordinance.

It may well be that the city comptroller erred in making the factual determination, or exercised unsound judgment, or abused his discretion in reaching the conclusions represented by the administrative ruling. If so, he is at liberty to alter his findings and conclusions, and promulgate a different rule—but only for future application. An administrative agency may not retroactively impeach its own general rules because of asserted errors of fact, judgment, or discretion on its own part. If it were permissible

for a taxing agency to challenge, years later, such rules promulgated by its own enforcement agency, taxpayers would never be able to close their books with assurance.

The regulation is also asserted to be invalid because it is "unreasonable." Appellant maintains that the regulation is unreasonable because it applies to a specific industry only, and not to all manufacturers.

■ Section 5 of the ordinance contemplates that regulations shall be prescribed to meet special circumstances. In issuing his letter of September 24, 1943, the city comptroller was confronted with circumstances which, in so far as the record indicates, may have been peculiar to the baking industry. The burden of proving otherwise, which was upon appellants, has not been sustained.

It is also contended that the regulation is unreasonable because it fixed value at cost, "which obviously could not be the actual value or there would be no production."

■ Granting the logic of the quoted words, we do not believe that it warrants the drastic action represented by the 1953 deficiency assessment. The value, when measured by cost, approximates sixty-five to sixty-seven per cent of the wholesale price in Seattle. Had the city comptroller measured value by the sales to commission men who sell outside the city (as we believe he could have done), it would have been seventy-two and one half per cent of the wholesale price. In our opinion, the spread between the value used and that which would have been clearly permissible is insufficient to warrant retroactive abrogation of the regulation for unreasonableness.

Appellants next contend that respondent failed to sustain its burden of proof as to the volume of products sold by respondent outside of Seattle.

This contention was not advanced in the trial court, except in respondent's brief on its motion for reconsideration. As there raised, this argument was made only on the assumption that the letter ruling was invalid and that respondent should have pleaded and proved some different method of apportionment. In any event, our examination of the record convinces us that the trial court's finding of

fact concerning the volume of products sold by respondent outside the city is not contrary to the clear preponderance of the evidence.

■ Another argument advanced by appellants is that, in making the delinquency assessment, the tax was computed in the manner specified in the instructions to taxpayers set out on the back of the taxpayer's copy of the report form and must therefore be upheld.

We have examined these tax instructions and find them to be a summary or paraphrasing of part of the taxing ordinance. The instructions are apparently intended for general application, and do not purport to cover special cases, such as are dealt with in the letter of September 24, 1943. In our view, the instructions were not intended to modify or supplant the method of computing value in certain cases, as set out in the letter.

■ Appellants argue that respondent's failure to file a written protest when it paid the delinquency assessment required dismissal of the action.

In the absence of a legislative requirement that a written protest be filed, none is necessary in order to preserve the taxpayer's position in connection with the payment of a state excise tax. *Great Northern R. Co. v. State*, 200 Wash. 392, 414, 93 P. (2d) 694; *Columbia Steel Co. v. State*, 34 Wn. (2d) 700, 707, 209 P. (2d) 482. We believe the same rule is applicable to a city excise tax. Neither the ordinance here under review nor any general state statute requires a written protest as a condition precedent to the obtaining of a refund of excise taxes erroneously assessed.

Finally, appellants challenge the entry of a personal judgment for the amount of the refund against W. C. Thomas, who is the comptroller of the city of Seattle. While not conceding that entry of judgment against Thomas was erroneous, counsel for respondent, at the oral argument, advised us that respondent has no objection to amending the judgment so as to name the city as the only judgment debtor. Accordingly, we do not pass upon the merits of this assignment.

The judgment is modified so as to dismiss the action, without costs, as to W. C. Thomas. As modified, the judgment is affirmed. Respondent will recover its costs on appeal from appellant, city of Seattle.

OTT, MALLERY, WEAVER, and ROSELLINI, JJ., concur.