72 Wn.2d 422 (1967)
433 P.2d 201
GROUP HEALTH COOPERATIVE OF PUGET SOUND, INC., Respondent,
v.
WASHINGTON STATE TAX COMMISSION, Appellant.[*]
No. 38714.
The Supreme Court of Washington, Department Two.
November 2, 1967.
*423 The Attorney General, Henry W. Wager and Timothy R. Malone, Assistants, for appellant.
Houghton, Cluck, Coughlin, Schubat & Riley, for respondent.
HAMILTON, J.
Respondent, Group Health Cooperative of Puget Sound, Inc., appealed to the Superior Court for Thurston County from an order of the State Tax Commission imposing a retroactive assessment of business and occupation taxes against amounts derived from certain of its activities and receipts between the years of 1959 and 1962. Respondent contended the amounts against which the tax was assessed were covered by and entitled to be excluded from the tax under the provisions of RCW 82.04.430(2) and/or 82.04.430(9). The superior court, upon the basis of admitted facts and supplementary oral testimony, entered findings of fact, conclusions of law, and judgment reversing the holding of the Tax Commission upon the ground that the tax assessed was deductible pursuant to RCW 82.04.430(9). The Tax Commission appeals.
Appellant assigns error to pertinent portions of the trial court's findings of fact, conclusions of law, and judgment. Primarily, the arguments emanating from appellant's assignments go to the issue of whether the deductions permitted under either RCW 82.04.430(2) or (9) are applicable to the pertinent activities of respondent. Secondarily, respondent contends that appellant is foreclosed from making retrospective assessments dating back to 1959 by virtue of its prior treatment of the assessed income as deductible under RCW 82.04.430(9).
Backgroundwise, the stipulated facts, the testimony, and the trial court's findings reveal that respondent is a nonprofit, nonstock, membership corporation, whose principal activity is furnishing comprehensive prepaid medical and hospital care to its individual membership and organizational contractees.
*424 Individual membership is open to any person or family unit without discrimination upon approval of a prescribed application and the payment of $200 in entrance fees coupled with regular monthly sums as fixed from time to time by respondent's board of trustees. The $200 entrance fee, a portion of which is refundable following termination of membership, is characterized by respondent as "capital dues" and is devoted to capital facilities. The monthly payments, in turn, are characterized as "medical dues" and are devoted to operational expenses.
Organizational participation, e.g., labor unions, fraternal bodies, etc., in respondent's services is accomplished by group contract. The form, nature, and characterization of the amounts received from such group contracts are not revealed by the record, and any allocation of such amounts for tax purposes has been deferred by the parties pending disposition of this case.
In carrying out its purpose and function, respondent has acquired a hospital complex in central Seattle which, besides hospital wards, houses respondent's principal laboratory, X ray, pharmaceutical, physiotherapy, surgical, specialized professionsal and administrative staff, and warehousing departments. When member patients, for any medical reason, are required to be observed or treated for any continuous period beyond 24 hours they are referred to and afforded hospitalization at this main facility (hereafter referred to as the "central facility"). Included within the complex of the central facility is an area designated as the "central clinic," the "out-patient clinic," or the "diagnostic and treatment center" (hereafter referred to as the "central clinic"), to which member patients come or are directed, on a round-the-clock basis, for such medical care, consultation, and attention as may not require overnight retention. The entire central facility complex is and has been exempt from property taxation since 1949.
In addition to the central facility and the central clinic, respondent owns and operates, for the convenience of its members, three separate "outlying clinics" at Renton, Northgate, and Burien, established in 1948, 1958, and 1964, *425 respectively. These outlying clinics are operated by regular professional and staff personnel assigned thereto, are open only during normal business hours, and furnish such medical care, attention, and treatment to member patients as does not require overnight facilities and service. Member patients who cannot be cared for at these outlying clinics or who require hospitalization or specialized treatment are referred to the central facility. At all times concerned, ad valorem taxes have been paid by respondent with respect to each of the outlying clinics.
The business and occupation taxes in question were assessed on July 26, 1963, against that portion of respondent's gross revenue, derived from its members as monthly "medical dues," attributable on a cost of operation basis to the services furnished by the central and existent outlying clinics between the years of 1959 and 1962, inclusive. (It should be noted at this point that the Burien clinic heretofore referred to was not in existence during the tax period in question; however, its tax status after 1964 will be affected by this case.) No tax was assessed upon that portion of such gross receipts as were allocable to the operation of respondent's central facility, exclusive of the central clinic.
[1] In approaching the issues raised by the respective arguments and contentions of the parties, we pause to observe that although appellant has assigned error to a number of the trial court's findings of fact, it does not contend such findings are lacking in evidentiary support. Rather, appellant contents itself with challenging the trial court's conclusions of law. Under these circumstances, and since the findings of fact are to a large measure predicated upon stipulated or undisputed facts, we in turn accept such findings as verities. Thorndike v. Hesperian Orchards, Inc., 54 Wn.2d 570, 343 P.2d 183 (1959).
The issues of law thus presented will be discussed in the following order: (a) Whether appellant is foreclosed, under the circumstances prevailing, from making a retrospective assessment; (b) the extent or applicability of the deduction permitted by RCW 82.04.430(9); and (c) the *426 applicability of the deduction provided by RCW 82.04.430(2).
Prefatory to a consideration of the first issue, it is necessary to understand that RCW 82.04.430(9), which permits a deduction of certain types of hospital revenue from the measure of the business and occupation tax, was amended by the legislature in 1961 and that the assessment here concerned (for the years 1959 through 1962, inclusive) spans the amendment. Thus, we are concerned with the affect of appellant's actions and rulings before and after the 1961 amendment, for it is these actions which respondent contends amount to a retroactive impeachment of appellant's own rulings.
Upon this issue, the trial court entered finding of fact No. 5, which, in part, reads:
Since June 9, 1949, and up to the time that the assessment was made on July 26, 1963, which is complained of herein, the Commission at all times herein has treated the dues and other income covered by the assessment (Ex. 1) in this proceeding as deductible pursuant to RCW 82.04.430(9).
This finding was supported and buttressed by the following circumstances: In 1947, the attorney general rendered an opinion holding that respondent's organization, as it then existed, was entitled to deduct its membership fee revenue under RCW 82.04.430(9) as that statute then read,[1] *427 subject, however, to the attainment of a tax exemption upon its hospital property; in 1948, respondent established and commenced operating the outlying clinic in Renton; in 1949, respondent was granted a tax exemption on its hospital property at which time it was operating what is now the central clinic at a separate location; appellant, upon being notified of the property tax exemption, advised respondent by letter[2] it would thereafter be entitled to the deduction in question under RCW 82.04.430(9); in 1953, appellant audited respondent and issued an assessment measured in part by the fees paid by the members, which assessment appellant, upon petition of respondent, amended to continue the deduction of the fee revenue as before; in 1958, respondent established and began the operation of its second outlying clinic in Northgate; and, so far as the record reveals, appellant continued to allow the pertinent deduction until after the 1961 statutory amendment and the assessment of July, 1963.
[2] Under these facts, the net effect of appellant's 1963 *428 assessment, insofar as it relates to respondent's fee revenue prior to the 1961 amendment of RCW 82.04.430(9), is an about-face with respect to its own prior administrative determination, interpretation, and application of the statutory deduction to respondent's operation. Appellant's ruling allowing the deduction in 1949 and the years following thereafter did not amount to an administrative modification or amendment of a legislative enactment as appellant now contends. Respondent's initial application and continued claim of the pertinent deduction, under the statute as worded by the 1945 legislative amendment, clearly called for and authorized a factual determination and exercise of judgment and discretion on the part of appellant with respect to respondent's organization. If the allowance of the deduction prior to the 1961 amendment of RCW 82.04.430(9) was erroneous, as appellant now contends it was, the error was due to appellant's misconstruction of the facts rather than its misinterpretation of the law as it then stood. This being so, we are satisfied appellant's turn-about falls within the ambit of our decision in Hansen Baking Co. v. Seattle, 48 Wn.2d 737, 296 P.2d 670 (1956), wherein we subscribed to the principle that an administrative agency could not retroactively impeach its own lawful rulings. In this connection, and in passing upon an analogous set of facts involving a retroactive assessment of the business and occupation tax by the Comptroller of the City of Seattle, we said, at 743:
It may well be that the city comptroller erred in making the factual determination, or exercised unsound judgment, or abused his discretion in reaching the conclusions represented by the administrative ruling. If so, he is at liberty to alter his findings and conclusions, and promulgate a different rule  but only for future application. An administrative agency may not retroactively impeach its own general rules because of asserted errors of fact, judgment, or discretion on its own part. If it were permissible for a taxing agency to challenge, years later, such rules promulgated by its own enforcement agency, taxpayers would never be able to close their books with assurance.
*429 We can conceive of no logical reason why this principle should not apply to appellant under the facts of this case. Accordingly, we hold that appellant is precluded from impeaching its former ruling by levying a deficiency assessment antedating the effective date of the 1961 amendment to RCW 82.04.430(9). We do not extend this holding to any lawful assessment levied after the effective date of the amendment in question for the reason that the language of the statute authorizing the deduction was changed in such a fashion as to necessitate a re-evaluation of respondent's entitlement thereunder. Appellant was, therefore, obligated to make a redetermination and the partial 1963 assessment was the result. It remains, then, to consider whether appellant made a correct determination regarding any of the remaining portions of the assessment.
We turn, thus, to the second issue presented, namely, the applicability and the extent thereof of RCW 82.04.430(9) as amended by laws of 1961, ch. 293, § 5, p. 2363.
[3] Before proceeding with a direct consideration of this issue, and with the third issue  the applicability of RCW 82.04.430(2)  we pause to observe that we attach no particular significance to the characterization of the statutory tax exclusions as "deductions" rather than "exemptions" insofar as the rules of statutory construction applicable here be concerned. Both a tax "exemption," which does not amount to total immunity, and a "deduction" presuppose a taxable status and must be claimed by the taxpayer if he is to benefit from either. In connection with each, the burden of showing qualification for the tax benefit afforded likewise rests with the taxpayer. And, statutes which provide for either are, in case of doubt or ambiguity, to be construed strictly, though fairly and in keeping with the ordinary meaning of their language, against the taxpayer. Crown Zellerbach Corp. v. State, 45 Wn.2d 749, 278 P.2d 305 (1954); Helvering v. Ohio Leather Co., 317 U.S. 102, 87 L.Ed. 113, 63 Sup. Ct. 103 (1942).
With respect to RCW 82.04.430(9), it is appellant's contention that the central clinic and the three outlying clinics do not qualify as hospitals or otherwise meet the requirements *430 of the statute allowing the claimed deduction. On the other hand, it is respondent's contention that the respective clinics are an integral and integrated part of their hospital or central facility.
We agree with appellant as to the outlying clinics but disagree as to the central clinic.
RCW 82.04.430(9), as amended by Laws of 1961, ch. 293, § 5, reads:
In computing tax there may be deducted from the measure of tax the following items:
....
(9) Amounts derived as compensation for services rendered to patients by a hospital, as defined in chapter 70.41, which is operated as a nonprofit corporation, nursing homes and homes for unwed mothers operated as religious or charitable organizations, but only if no part of the net earnings received by such an institution inures directly or indirectly, to any person other than the institution entitled to deduction hereunder. In no event shall any such deduction be allowed, unless the hospital building is entitled to exemption from taxation under the property tax laws of this state.
RCW 70.41, dealing with hospital licensing and regulation, defines a hospital in the following manner (RCW 70.41.020(3)):
"Hospital" means any institution, place, building, or agency which provides accommodations, facilities and services over a continuous period of twenty-four hours or more, for observation, diagnosis, or care, of two or more individuals not related to the operator who are suffering from illness, injury, deformity, or abnormality, or from any other condition for which obstetrical, medical, or surgical services would be appropriate for care or diagnosis. "Hospital" as used in this chapter does not include hotels, or similar places furnishing only food and lodging, or simply domiciliary care; nor does it include clinics, or physician's offices where patients are not regularly kept as bed patients for twenty-four hours or more; ....
Combining the above two statutes in pertinent part, we have:

*431 Amounts derived as compensation for services rendered to patients by a hospital ... defined [as].... any institution, place, building, or agency which provides accommodations, facilities and services over a continuous period of twenty-four hours or more, for observation, diagnosis, or care, of two or more individuals ... who are suffering from illness, injury, deformity, or abnormality, or from any other condition for which obstetrical, medical, or surgical services would be appropriate for care or diagnosis.... [,] which is operated as a non-profit corporation, ... but only if no part of the net earnings received by such an institution inures directly or indirectly, to any person other than the institution entitled to deduction hereunder. In no event shall any such deduction be allowed, unless the hospital building is entitled to exemption from taxation under the property tax laws of this state.... "Hospital" ... does not include ... clinics, or physician's offices where patients are not regularly kept as bed patients for twenty-four hours or more; ....
[4] Whatever else may be said regarding the clarity, or lack of clarity, in the statutes or any combination thereof, and/or about the uniqueness of respondent's organization and operation it appears reasonably evident that the legislature basically had in mind, as deductible amounts from the measure of the tax imposed, such amounts as were derived as compensation for services furnished to patients by a hospital, as such facilities and services are ordinarily comprehended. We are satisfied, from the language used in the statute and in the definition, that ordinary medical consultation and treatment, such as one seeks and obtains in a doctor's office, or clinic, however paid for, was not contemplated as being within the range of the pertinent deduction.
It is true, as the trial court found, that organization-wise respondent corporation is integrated and its various activities are interrelated. Yet, it is also true that respondent undertakes to furnish to its members, according to its membership agreement and fee or "medical dues" schedule, two severable types of health service and coverage, i.e., *432 medical consultation, diagnosis, treatment, and care by way of home or office calls, and hospitalization together with the usual services accompanying such a confinement. The first type of service is essentially furnished and performed in respondent's outlying clinics. The second type of service is, of course, supplied through respondent's central or hospital facility, including in some measure, at least, the central clinic which serves the central complex on a basis akin to the ordinary intake or emergency room in the average hospital. In short, the type of coverage offered by respondent to its members is not too dissimilar from that afforded by various other hospital and medical insurance plans. The uniqueness of respondent's operation springs principally from the fact that it is a cooperative, owns and operates its own facilities, and employs its own professional medical staff in all of its phases.
As we have indicated, the line of demarcation between the character of the services supplied by respondent is reasonably discernible. Likewise, the division between the facilities which afford the respective services is, with the exception of the central clinic, fairly observable. In this vein, the stipulated facts, the evidence presented, and the trial court's findings clearly reveal that the outlying clinics are staffed, equipped, administered, and provide that type of medical service to the members which one would expect to find and receive in the average private physician's office or clinic. They are open only during regular business hours, provide no domiciliary care or overnight facilities, and are physically separate and apart from the central or hospital complex. And, as with the ordinary doctor's office, when the patient's needs exceed the resources at hand referral to specialists or to the hospital, as the case may be, is recommended and becomes available. The only difference, in this latter respect, from a private practitioner's procedure, is that the member patients are referred to respondent's staff specialists and/or hospital complex rather than to other resources, and the budgeting, accounting, and supply functions are handled by a central agency.
On the other hand, the central facility, including the *433 central clinic, furnishes modern as well as all of the traditional hospital services, i.e., bed wards, surgery rooms, laboratories, X-ray equipment, pharmaceutical supplies, specialized professional staff, nursing staff, catering services, and 24 hour intake and emergency facilities. These services differ in no substantial way, except in their over-all organizational scheme, from the ordinary hospital. Within the framework of this aspect of respondent's service, the central clinic truly forms an integral, interrelated and essential part of the central facility, for, although it undertakes to provide some out-patient services akin to the outlying clinical service, it nevertheless provides the round-the-clock intake and emergency services which form a constituent part of the normal hospital operation. In this sense, then, the central clinic is no more separable from the central or hospital facility than the surgery rooms, the bed wards, the laboratory or the other components of the hospital activity, all of which might incidentally perform some out-patient service.
In addition to the foregoing, although we do not consider it decisive in this case, is the fact that respondent's outlying clinics are not exempt from property taxes, whereas the central clinic, as a part of the central facility, enjoys such a tax exempt status.
We conclude, from the foregoing, that appellant was warranted, under RCW 82.04.430(9), as amended, in assessing the tax in question against such portion of respondent's "dues" revenue as could be properly allocated to the services performed by the outlying clinics since the effective date of the 1961 amendment to that statute. The appellant was not, however, warranted in attempting to segregate, allocate, and assess the tax against the central clinic, which forms a functional and physical component of the hospital facility.
We turn, finally, to the third issue presented, that is, whether the monthly fees paid by respondent's members fall within the "bona fide dues" deduction permitted by RCW 82.04.430(2), which provides:

*434 In computing tax there may be deducted from the measure of tax the following items:
....
(2) Amounts derived from bona fide initiation fees, dues, contributions, donations, tuition fees, and endowment funds. This paragraph shall not be construed to exempt any person, association, or society from tax liability upon selling tangible personal property or upon providing facilities or services for which a special charge is made to members or others. Dues which are for, or graduated upon, the amount of service rendered by the recipient thereof are not permitted as a deduction hereunder; ....
[5] We cannot agree with respondent that the monthly "medical dues" or fees paid by its membership constitute "bona fide" dues within the contemplation of the foregoing statute. Respondent is organized to provide comprehensive, prepaid medical and hospital services to its membership, and however respondent may characterize these monthly payments they are, under the evidence adduced, devoted to the operational expenses of the organization and are subject to change from time to time. The conclusion is inescapable, and was tacitly if not directly recognized by one of respondent's witnesses, that if respondent's operation is to be actuarially sound, the monthly fees must of necessity be related to or graduated upon the cost of operation which, in turn, reflects upon the services available and furnished to its members. The fact that respondent may choose to call the monthly payments "dues," or the fact that by the very nature of its operation some members receive more services than others, does not change the underlying fact that the totality of its services to its membership over a given period of time is financially geared to the aggregate of the monthly fees received or anticipated for operational expenses over a given period of time. Furthermore, it appears from respondent's fee schedule, accompanying its membership agreement, that initial or introductory monthly fees vary between age, sex, and nature of coverage sought by or anticipated for a prospective member. These classifications, and the monthly fees attributed to each, are undoubtedly *435 based upon distinctions between the nature and extent of services that may be required or expected by an average of the respective age, sex, or other groupings.
Under these circumstances, it is our view that the monthly fees involved in this case do not qualify as a permissible deduction under RCW 82.04.430(2) for the reason that they are "Dues which are for, or graduated upon, the amount of service rendered by the recipient thereof." (Italics ours.) Cf. Red Cedar Shingle Bureau v. State, 62 Wn.2d 341, 382 P.2d 503 (1963).
In summary and for the reasons above stated, we hold that (a) appellant is precluded from levying the challenged assessments for business and occupation tax against respondent based upon respondent's operations prior to the effective date of Laws of 1961, ch. 293, § 5; (b) appellant was and is warranted in levying the challenged assessments, insofar as they may be correct, when measured by respondent's "medical dues" income properly allocable to the services furnished by the "outlying clinics" only; and (c) the "medical dues" in question do not qualify as permissible deductions under RCW 82.04.430(2).
The judgment of the trial court is modified to conform herewith. Each party shall bear its own costs.
FINLEY, C.J., HUNTER, J., and BARNETT, J. Pro Tem., concur.
January 22, 1968. Petition for rehearing denied.
NOTES
[*] Reported in 433 P.2d 201.
[1] The provisions of RCW 82.04.430(9) find their genesis in Laws of 1935, ch. 180 § 11(i), p. 719, where they first appeared as a tax exemption. Although the statutory language of the original provision was amended in 1937 and 1941, it continued in a tax exemption category until 1945 when the legislature not only again amended its language but also changed it from a tax exemption provision to a tax deduction provision. (Laws of 1945, ch. 249, §§ 2 and 3, pp. 737-42.) The language of the 1945 amendment remained unchanged until the 1961 amendment and, in pertinent part, reads as follows:

In computing tax there may be deducted from the measure of tax the following items:
....
(i) Amounts derived as compensation for services rendered to patients by a hospital or other institution which is organized as a non-profit corporation devoted to the care of human beings with respect to the prevention or treatment of disease, sickness or suffering: Provided, That no part of the net earnings received by such an institution shall inure, directly or indirectly, to any person other than the institution entitled to deduction hereunder: Provided further, That in no event shall any such deduction be allowed, unless the hospital building is entitled to exemption from taxation under the property tax laws of this state, and unless the superintendent or other proper officer of the institution shall, under oath, make annual reports to the State Board of Health of its receipts and disbursements during the preceding year, specifying in detail the sources from which receipts have been derived, and the object to which disbursements have been applied, and shall furnish in said report full and complete vital statistics for the use and information of the State Board of Health: .... Laws of 1945, ch. 249, § 3, p. 741.
[2] Appellant's letter of notification, dated June 9, 1949, and signed by a then member of the Tax Commission reads as follows:

We are in receipt of your letter of June 3 enclosing photostatic copy of a letter of the King County Assessor granting exemption from property tax to Group Health Cooperative of Puget Sound, Inc.
In consequence of this filing you are advised that this cooperative will henceforth be entitled to the deduction in computing business and occupation tax under the provisions of Subsection (i), Section 12, Chapter 180, Laws of 1935, as amended.