1 P.3d 607 (2000)
101 Wash.App. 106
PORT OF SEATTLE, Appellant,
v.
STATE of Washington, DEPARTMENT OF REVENUE, Respondent.
No. 25336-4-II.
Court of Appeals of Washington, Division 2.
June 9, 2000.
*608 John Thomas Piper, Robert Lee Mahon, Donald Michael Young, Bogle & Gates, Seattle, for Appellant.
Christine O. Gregoire, Attorney General, and Anne Elizabeth Egeler, Cameron Gordon *609 Comfort, Assistant Attorneys General, Olympia, for Respondent.
BRIDGEWATER, J.
The Port of Seattle (the Port) appeals from a summary judgment dismissal of its claim for a refund under RCW 82.04.050(7) of certain retail sales taxes paid on construction projects for the expansion of the Seattle-Tacoma International Airport Terminal (Sea-Tac airport). Because the statute containing a tax exemption for "mass public transportation terminal(s)" refers only to ground transportation, we hold that the Legislature did not intend to give a tax exemption for an airport terminal. Also, we hold that the Department of Revenue never advised the Port that it was entitled to a tax exemption for its terminal. Thus, the Port cannot demonstrate reliance upon a previous opinion of the Department that would prevent a retroactive reversal of a previous ruling. We affirm.
The facts are essentially undisputed. The taxpayer, the Port, is a political subdivision of the State. It owns and operates the Sea-Tac airport. Between January 1988 and December 1993, the Port expanded and improved the airport parking garage and the passenger terminal in a number of construction projects. During the course of construction, the Port sought advice from the Department of Revenue (the Department) as to whether the parking garage projects were entitled to an exemption from the definition of "retail sale" for tax purposes under WAC 458-20-171 and RCW 82.04.050(7).
In a series of letters, Department information specialists advised the Port that the parking garage expansion and various associated projects (taxi driver lounge, rental car lobby, bus shelters, and a ground transportation monitoring system) were exempt from sales taxes under the statute. The Port nonetheless paid a small amount of taxes on certain aspects of the parking garage expansion, but it paid, without protest, the full retail sales taxes on contracts for the terminal improvements.
In December 1992, however, the Port filed a request for a tax refund, arguing that all of the terminal and parking garage projects were subject to the sales tax exemption in RCW 82.04.050(7) for a "mass public transportation terminal or parking facility." The Department concluded that the Sea-Tac airport did not qualify for the tax treatment provided in RCW 82.04.050(7). In its final determination, the Department denied the Port's request for a refund of $10,576,000 plus interest.
The Port appealed to superior court, and both sides moved for full or partial summary judgment. The trial court agreed with the Department that the airport terminal improvement projects were not exempt from the retail sales tax under RCW 82.04.050(7). Because, however, the Department agreed during oral argument to abide by its previous advice to the Port regarding the parking garage, the court ordered the Department to refund the taxes the Port had paid on the garage expansion, amounting to $44,781. The trial court dismissed the Port's claim for a refund of taxes paid on the terminal projects.
The Port appealed directly to the Supreme Court. The Supreme Court denied direct review and transferred the case to this court.

I. RCW 82.04.050(7)
Generally, the sale of materials, labor, and services to build, repair, or improve a building or structure is a taxable event subject to retail sales tax. RCW 82.08.020;[1] RCW 82.04.050. RCW 82.04.050(7),[2] however, creates a limited exception stating that a retail sale shall not include the sale of or charge made for labor or services for
the building, repairing, or improving of any street, place, road, highway, easement, right of way, mass public transportation terminal or parking facility, bridge, tunnel, or trestle which is owned by a municipal corporation or political subdivision of the state or by the United States and which is *610 used or to be used primarily for foot or vehicular traffic including mass transportation vehicles of any kind.
RCW 82.04.050(7). Under this provision, when any of the enumerated construction projects are performed, no retail sales tax is charged for labor or services. Construction materials are still taxed on the contractor, who is the consumer under RCW 82.04.190(3). The contractor's public customer, i.e. the Port, is not subject to any retail sales tax on the construction contracts. RCW 82.04.050(7); RCW 82.04.190. The net result is a partial tax subsidy for the kinds of transportation infrastructure specified in the statuteswith the contractor paying sales tax on the materials and the public customer exempt from all retail sales taxes.
In this case, the Port contends that it is not required to pay retail sales tax under RCW 82.04.050(7) for construction on the Sea-Tac airport terminal and that it is entitled to a refund of the retail sales tax paid. The parties dispute whether the term "mass public transportation terminal" includes airport terminals and whether mass transportation "vehicles" includes airplanes. These terms are not defined in the statute.[3]
The court's purpose in construing a statute is to ascertain and give effect to the intent and purpose of the Legislature. State v. Williams, 62 Wash.App. 336, 338, 813 P.2d 1293, review denied, 117 Wash.2d 1027, 820 P.2d 511 (1991). To determine legislative intent, we look first to the language of the statute. Lacey Nursing v. Department of Revenue, 128 Wash.2d 40, 53, 905 P.2d 338 (1995). Undefined statutory terms are given their usual and ordinary meaning. Nationwide Ins. v. Williams, 71 Wash.App. 336, 342, 858 P.2d 516 (1993), review denied, 123 Wash.2d 1022, 875 P.2d 635 (1994). Each provision of the statute should be read in relation to the other provisions, and the statute should be construed as a whole. In ascertaining the meaning of a particular word as used in a statute, a court must consider both the statute's subject matter and the context in which the word is used. Chamberlain v. Department of Transp., 79 Wash.App. 212, 217, 901 P.2d 344 (1995). When a statutory term is undefined, we may look to a dictionary for its ordinary meaning. See State v. Sunich, 76 Wash.App. 202, 206, 884 P.2d 1 (1994).
Further, while tax statutes generally are interpreted in favor of the taxpayer, exemption statutes are construed strictly against the taxpayer, and the taxpayer has the burden of establishing any exemption. See Sacred Heart Medical Center v. Department of Revenue, 88 Wash.App. 632, 637, 946 P.2d 409 (1997). Although the Port asserts that the statutes at issue are definitions, not exemptions, and thus narrow construction is inappropriate, these statutes do exempt the public customer from retail sales taxes on labor and services, while the contractor is required to pay retail sales tax only on construction materials. RCW 82.04.050(7); RCW 82.04.190(3); WAC 458-20-171. In addition, the Port cites no authority that supports its contention that definitions cannot also be exemptions. Thus, the statute is plainly an "exemption" statute and is to be strictly construed against the Port.
A. Mass Public Transportation Terminal
The Port argues that the term "mass public transportation terminal" includes airport *611 terminals. This might appear at first blush to be a reasonable construction. Notably, the Port separates this phrase from its context in the statute and asserts, without citation to authority, that each word should be analyzed separately followed by a harmonization of the words.[4] Nonetheless, the common understanding of this phrase could reasonably include the Sea-Tac airport terminal, which is undoubtedly used for transportation, is open to the public, and services mass amounts of people. But, common understanding does not necessarily reflect legislative intent.
We are to construe the statute as a whole and consider the subject matter and the context in which particular words are used. See Chamberlain, 79 Wash.App. at 217, 901 P.2d 344. The well recognized rules of statutory construction, noscitur a sociis and ejusdem generis, suggest an alternative construction of "mass public transportation terminal." Under the doctrine of noscitur a sociis, "the meaning of words may be indicated or controlled by those with which they are associated." State v. Jackson, 137 Wash.2d 712, 729, 976 P.2d 1229 (1999) (quoting Ball v. Stokely Foods, Inc., 37 Wn.2d 79, 87-88, 221 P.2d 832 (1950); see also Shurgard Mini-Storage v. Department of Revenue, 40 Wash.App. 721, 727, 700 P.2d 1176 (1985). In applying this doctrine to determine the meaning of a word in a series, "[i]t is ... familiar policy in the construction of terms of a statute to take into consideration the meaning naturally attaching to them from the context, and to adopt the sense of the words which best harmonizes with the context." Jackson, 137 Wash.2d at 729, 976 P.2d 1229 (citations omitted).
Under the doctrine of ejusdem generis, "specific words or terms modify and restrict the interpretation of general words or terms where both are used in sequence." State v. Reader's Digest Ass'n Inc., 81 Wash.2d 259, 279, 501 P.2d 290 (1972); see also State v. Stockton, 97 Wash.2d 528, 532, 647 P.2d 21 (1982). "The ejusdem generis rule is generally applied to general and specific words clearly associated in the same sentence in a pattern such as `[specific], [specific], or [general]' or `[general], including [specific] and [specific].'" Southwest Wash. Chapter, Nat'l Elec. Contractors Ass'n v. Pierce County, 100 Wash.2d 109, 116, 667 P.2d 1092 (1983).
The term "mass public transportation terminal" is found in a list of structures that support ground transportation: "street, place, road, highway, easement, right of way ... parking facility, bridge, tunnel, or trestle[.]" RCW 82.04.050(7). Given that the term "mass public transportation terminal" is sandwiched between phrases denoting infrastructure for ground transportation, we follow the doctrines of noscitur a sociis and ejusdem generis and hold that the Legislature meant to include only terminals for ground transportation and not airport terminals in this statute.
Even if we were to consider that the term "mass public transportation terminal" was susceptible to two or more reasonable interpretationsthat is, either that the Port was correct to include air travel or that statutory construction excluded air travel we reach the same result. If the term were susceptible to two or more reasonable interpretations, it would be ambiguous, Garrison, 46 Wash.App. at 54, 728 P.2d 1102, and we would look to other sources of legislative intent. See Sunich, 76 Wash.App. at 206, 884 P.2d 1; State v. Garrison, 46 Wash.App. 52, 54-55, 728 P.2d 1102 (1986). If there was still "doubt or ambiguity," the tax exemption statute "must be construed strictly, though fairly and in keeping with the ordinary meaning of [its] language, against the taxpayer." Sacred Heart Medical Center, 88 Wash.App. at 637, 946 P.2d 409 (quoting Group Health Co-op. of Puget Sound, Inc. v. Washington State Tax Comm'n, 72 Wash.2d 422, 429, 433 P.2d 201 (1967).
In this case, the legislative intent does not indicate that the Legislature considered airport terminals or air travel in this mass transportation statute. The Legislature added *612 the "mass public transportation" language to RCW 82.04.050(7) in 1969, with other amendments to the Mass Transportation Act. The Legislature amended its statement of purpose in RCW 35.95.010, expressing the need to maintain the financial solvency of municipally owned and operated transportation systems in the "urban" areas of the state. Laws of 1969, Ex.Sess., ch. 255, § 1. The Legislature was concerned because municipalities had been forced to subsidize their transportation services to the detriment of other essential public services. Laws of 1969, Ex.Sess., ch. 255, § 1. While the Legislature gave no indication that it was concerned with the financial solvency of air travel or airport infrastructure such as runways, the legislative materials available do not include or specifically exclude the possibility of airports being included in mass transportation terminals. Thus, sources of legislative intent would not resolve the ambiguity.
Because tax exemptions are to be strictly construed against the taxpayer, we would resolve any ambiguity against the Port. And we would reach the same result as our holding. Thus, we hold that "mass public transportation terminals" do not include airport terminals under RCW 82.04.050(7).
B. Vehicle
Another term in this statute also supports the Department's contention that airport terminals do not fall under this statute. The statute requires that the terminals or other listed structures be used "primarily for foot or vehicular traffic including mass transportation vehicles of any kind." RCW 82.04.050(7). The Port cites dictionaries that define "vehicle" as a broad means of transportation that includes airplanes, spacecraft, and ground transport. Other dictionaries, however, define "vehicle" as limited to land conveyances or as a broad means of transportation. For example, vehicles can be defined as "[a]ny device or contrivance for carrying or conveying persons or objects, including land conveyances, vessels, aircraft, and spacecraft: sometimes specifically restricted to a land conveyances on wheels, runners, treads etc." NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE, (Second College ed.1976).
Further, although etymologically the term is broad enough to cover airplanes, "vehicle" is ordinarily understood to mean a machine designed to move solely on the land. Sperry v. Maki, 48 Wash.App. 599, 602, 740 P.2d 342, review denied, 109 Wash.2d 1014 (1987) (concluded the terms "vehicle" or "motor vehicle" did not include aircraft in their common and ordinary usage and determined that underinsured motorist policy did not cover a collision with a car and an aircraft making an emergency landing on a highway). "Although the result is always contingent on the particular wording involved, it has been almost invariably held, in the construction of statutes and regulations, that airplanes are not within the terms `vehicles,' `motor vehicles,' etc." P.M. Dwyer, Annotation, Airplane as Within the Terms "Vehicle," "Motor Vehicle," Etc., 165 A.L.R. 916 (1946). Further, as noted by Justice Holmes in McBoyle v. United States, 283 U.S. 25, 26, 51 S.Ct. 340, 75 L.Ed. 816 (1931), "in everyday speech, `vehicle' calls up the picture of a thing moving on land."[5] Likewise here, the term under discussion calls up the popular picture. For after including "street," "road," "highway," "right of way," "bridge," "tunnel," "trestle" and "foot or vehicular traffic," the words "public transportation vehicle of any kind" still indicate that a vehicle in the popular sensea vehicle running on landis the theme. It is difficult to read words that so carefully enumerate the different types of infrastructure that support ground transportation and have no reference to runways or any kind of infrastructure that specifically supports aircrafts, as including airplanes or airports.
Because "vehicle" may be reasonably interpreted to include either airplanes or be restricted to ground transportation, the term is ambiguous. Further, there is no legislative history that resolves this issue. Thus, we strictly construe the term against the taxpayer, *613 the Port, and hold that the Sea-Tac terminal is not tax exempt because it is not used primarily for vehicles.
The Port contends that even if the terms "mass public transportation terminal" and "vehicles" are narrowly interpreted to exclude airport terminals and airplanes, Sea-Tac would still qualify for the tax treatment of RCW 82.04.050(7). The Port argues that Sea-Tac is a major terminal and hub for extensive foot and mass ground transportation and, thus, the Sea-Tac terminal is used primarily for foot and vehicular traffic under RCW 82.04.050(7). Contrary to the Port's arguments, the majority of the people who use the Sea-Tac terminal are there for air travel purposes (i.e. to fly on an airplane, to meet or drop off passengers of airplanes, etc.) The nature of the Sea-Tac terminal is not altered by the large number of people who arrive at the airport in vehicles, cars, shuttles, buses, etc. and who walk through the terminal. We hold that Sea-Tac airport is not used primarily for foot or vehicular traffic; it is used primarily for air travel. There was no error.

II. Advisory Letters from the Department of Revenue
The Port next contends that, even if RCW 82.04.050(7) does not apply to the airport terminal, the Department should be precluded from denying that it applies because of the advice the Department gave regarding the Sea-Tac parking garage expansion. The Department had advised the Port in several response letters that the parking garage projects, including an automobile monitoring system and an area for bus and taxi drivers, were subject to RCW 82.04.050(7).[6] The Port argues that the Department is retroactively reversing its previous rulings, and cites Hansen Baking Co. v. City of Seattle, 48 Wash.2d 737, 296 P.2d 670 (1956) and Group Health Co-op. of Puget Sound, Inc. v. State Tax Comm'n, 72 Wash.2d 422, 433 P.2d 201 (1967).
In each of the cited cases, the taxing authority attempted to retroactively assess taxes on a certain taxpayer after changing its previous position regarding the specific tax owed by that taxpayer. In Hansen Baking Co., the city told the baking company it could base the value of the products it shipped out of the city on the cost of production, and the baking company thereafter calculated the taxes it owed accordingly. In Group Health, the state assured the taxpayer it could deduct its membership fees in calculating its taxes, and it did so for several years. In both instances, the taxing authority changed its position and assessed back taxes. The court held in both cases that taxing authorities may not retroactively impeach their own rulings and thereby collect back taxes. Hansen Baking Co., 48 Wash.2d at 743, 296 P.2d 670; Group Health, 72 Wash.2d at 428-29, 433 P.2d 201. In both instances, the court observed that if a taxing agency could challenge, years later, rulings by its own enforcement agency, "taxpayers would never be able to close their books with assurance." Group Health, 72 Wash.2d at 428, 433 P.2d 201 (quoting Hansen Baking Co., 48 Wash.2d at 744, 296 P.2d 670).
Both of these cases are distinguishable from the present one. First, the Port never sought, and the Department never gave, advice on whether the airport terminal projects were exempt from sales taxes. The Port sought advice only on the parking facility projects, and the Department only addressed the specific fact patterns that the Port presented. Second, the Port did not rely on the Department's advice about the parking garage in paying taxes on the terminal projects. Rather, it paid sales taxes on those projects for several years, never suggesting that it should not be doing so based on the Department's advice. This case, therefore, is not like Hansen Baking Co. and Group Health, where the taxpayers paid a specific tax in accordance with specific rulings of the taxing authority, and then was assessed a deficiency when the taxing authority changed its position. The Department *614 never told the Port it did not have to pay sales taxes on the terminal projects, and the Department is not now retroactively assessing a deficiency against the Port based on a change of position. To the extent the Port paid taxes on the parking garage expansion, the Department conceded the Port is entitled to a refund in light of its earlier advice. We hold that there was no error in the finding that the Department's advisory letters did not preclude it from claiming the airport terminal projects were subject to sales taxes.
Affirmed.
ARMSTRONG, C.J., and HUNT, J., concur.
NOTES
[1] RCW 82.08.020 provides that, "there shall be collected a tax on each retail sale in this state[.]"
[2] RCW 82.04.050 was amended in 1998. As a result, Former RCW 82.04.050(6) (1993), amended by Laws of 1998, ch. 332, § 2, at issue in this case, is now codified as RCW 82.04.050(7), but the language has not changed.
[3] No definition of "mass public transportation" is provided in any Washington statute. The Supreme Court has discussed "public transportation" as including buses, trains, or other carriers that travel on the highways, rails, water, or through the air for the transportation of the public. State ex rel. O'Connell v. Slavin, 75 Wash.2d 554, 560, 452 P.2d 943 (1969). But, courts have not defined "mass public transportation."

"Vehicle" is not defined in RCW 82.04, but it is defined in other unrelated statutes. See e.g. RCW 81.77.010 (defining vehicle as a device capable of being moved on a highway for purposes of a statute on transport of solid waste).
WAC 458-20-171 defines certain terms from RCW 82.04.050(7) and provides: "The term `street, place, road, highway, etc.' is used in the ordinary sense that the combination of such words implies. It includes docks used primarily by ferry boats operated in connection with a street, road or highway, but does not include railroads, wharves, moorings, hallways, catwalks, or runways, aprons or taxiways for the landing, take-off or movement of airplanes within airports or landing fields; nor does it include ferry boats, even though the ferry be operated in connection with a street, road or highway[.]"
[4] For example, the Port vehemently argues that because Sea-Tac airport transports a greater "mass" of people than any metro bus service or other means of ground transportation, its terminal must be included in the term "mass public transportation terminal."
[5] McBoyle involved a theft of an airplane. The United States Supreme Court held that airplanes were not included in the term "vehicle" in a statute criminalizing theft of a vehicle. McBoyle, 283 U.S. 25, 51 S.Ct. 340.
[6] The letters from the Department refer to WAC 458-20-171, known as Rule 171. Rule 171 implements RCW 82.04.050(7) and RCW 82.04.190(3).