[No. 46695. En Banc. November 26, 1980.]

WILFRID W. NEWSCHWANDER, *Appellant,* v. BOARD OF TRUSTEES OF THE WASHINGTON STATE TEACHERS' RETIREMENT SYSTEM, *Respondent.*

*Watson, Grosse & Kelly,* by *C. Kenneth Grosse* and *Ronald E. Farley,* for appellant.

*Slade Gorton, Attorney General,* and *Tim Malone* and *Matthew J. Coyle, Assistants,* for respondent.

STAFFORD, J.—Appellant Wilfrid Newschwander represents a class of litigants who were members of the Washington State Teachers' Retirement System (WSTRS) prior to 1957. All were employed at Central, Eastern, or Western Washington State College (now universities). In 1957, all members of the class transferred membership from WSTRS to the Teachers' Insurance and Annuity Association (TIAA), leaving their accumulated contributions in WSTRS. No member of the class has contributed to WSTRS since 1957.

In 1976, appellants petitioned the WSTRS Board of Trustees for a declaratory ruling, pursuant to RCW 34.04-.080, concerning computation of WSTRS retirement benefits to be received by the class members. They asserted the statutory phrase "two highest compensated consecutive

years of service", as used in RCW 41.32.497, includes the time during which a member was employed for compensation by an "employer", as defined in RCW 41.32.010(12), regardless of whether the class member was contributing to WSTRS during those 2 years.

The Board rejected the contention and the class appealed. The Superior Court affirmed the Board and we, in turn, affirm the trial court.

The facts reveal that prior to 1957, most faculty members of the three state colleges were members of WSTRS. The college administrations determined their faculty hiring programs would be improved by switching from WSTRS to a nationwide retirement program, TIAA. In 1957, the Legislature enacted chapter 76 authorizing the state colleges to adopt their own retirement programs. Laws of 1957, ch. 76, § 4. Chapter 76, section 4 also provided that WSTRS members who were designated to change to a new system would retain credit for their service in WSTRS, would leave their accumulated contributions in the WSTRS retirement fund, and upon attaining eligibility for retirement under WSTRS would receive a retirement allowance from WSTRS. The retirement allowance would consist of an annuity which was to be the actuarial equivalent of the recipient's accumulated contributions at his or her age when becoming eligible for retirement and a pension of $4 per month for each year of creditable service established and retained at the time of designation. The retirement allowance set forth in section 4 was identical to that being paid to retiring members of WSTRS in 1957. *See* Laws of 1955, ch. 274, § 21.

All three colleges, acting pursuant to the foregoing authorization, adopted TIAA. The members of appellant's class are those who changed from WSTRS to TIAA and were so designated by the college trustees. All members of the class left their accumulated contributions in WSTRS pursuant to Laws of 1957, ch. 76, § 4.

In 1963, the Legislature increased the pension portion of the retirement allowance for all persons *who continued to*

*contribute to WSTRS.* Laws of 1963, 1st Ex. Sess., ch. 14, §
16. The retirement allowance for those who had switched to
TIAA in 1957 continued to be controlled by Laws of 1957,
ch. 76, § 4, however.

In 1969, the Legislature incorporated much of Laws of
1957, ch. 76, including an amended section 4, into the new
higher education code, RCW Title 28B. The present version
of section 4, now RCW 28B.10.417, was adopted in 1971. It
provided, and insofar as relevant still provides, a WSTRS
retirement allowance for members of the class

> consisting of an annuity which shall be the actuarial
> equivalent of his or her accumulated contributions at his
> or her age when becoming eligible for such retirement
> and a pension for each year of creditable service estab-
> lished and retained at the time of said designation as
> provided in RCW 41.32.497 as now or hereafter amended.

From the foregoing it is clear the computation of
WSTRS pension benefits for the class is regulated in part
by RCW 41.32.497 which currently provides in relevant
part:

> Any person who became a member on or before April 25,
> 1973 and who qualifies for a retirement allowance shall,
> at time of retirement, make an irrevocable election to
> receive either the retirement allowance by RCW 41.32-
> .498 as now or hereafter amended or to receive a retire-
> ment allowance pursuant to this section consisting of:
> (1) An annuity which shall be the actuarial equivalent of
> his accumulated contributions at his age of retirement,
> (2) A basic service pension of one hundred dollars per
> annum, and (3) *A service pension* which shall be equal
> to one one-hundredth of his average earnable compensa-
> tion for his *two highest compensated consecutive years
> of service* times the total years of *creditable service*
> established *with the retirement system*: . . .

(Italics ours.) RCW 41.32.010 provides definitions to be
used with the chapter unless the context plainly requires a
different meaning. The following definitions are important
to an understanding of RCW 41.32.497.

RCW 41.32.010:

(8) "Creditable service" means membership service plus prior service for which credit is allowable. This subsection shall apply only to persons who establish membership in the retirement system on or before September 30, 1977.

. . .

(11)(a) "Earnable compensation" for persons who establish membership in the retirement system on or before September 30, 1977, means all salaries and wages paid by an employer to an employee member of the retirement system for personal services rendered during a fiscal year. . . .

. . .

(12) "Employer" means the state of Washington, the school district, or any agency of the state of Washington by which the member is paid.

. . .

(27) "Retirement system" means the Washington state teachers' retirement system.

(28)(a) "Service" means the time during which a member has been employed by an employer for compensation . . .

As noted previously, appellants contend RCW 41.32.497 and the foregoing statutory definitions provide a service pension formula in which the phrase "two highest compensated consecutive years of service" includes the time during which a WSTRS member was employed for compensation by an "employer", as defined above, regardless of whether the member was making contributions to WSTRS during the critical 2 years. Accordingly, it is asserted, appellants are not limited to pension benefits based on their pre–1957 period of contribution to WSTRS. Rather, they claim an entitlement to use the more highly compensated post–1957 years of service to compute their total pension benefits.

In support of their contention, appellants rely upon the broad definition of "service" provided in RCW 41.32-.010(28) as well as on a claimed failure of RCW 41.32.497 to plainly distinguish between contributing and noncontributing WSTRS members. Further, appellants observe that

RCW 41.32.497 contains references both to "years of creditable service" and "compensated consecutive years of service", thus indicating that when the Legislature intended to refer to "creditable service" (*i.e.,* years of service in which a member was making WSTRS contributions) it did so with specific language to that effect.

We do not agree with appellants' interpretation of RCW 28B.10.417 and RCW 41.32.497 for several reasons. First pursuant to RCW 28B.10.417,[1] faculty personnel who opted for the new system (TIAA), *who had been designated* by the college board of trustees as being subject to an annuity or retirement income plan and who, *at the time of such designation were members of WSTRS,* were to receive credit for their service in WSTRS and were to leave their accumulated contributions in the teachers' retirement fund. *Upon* becoming eligible for retirement under WSTRS, such faculty members were to receive a retirement allowance from WSTRS consisting of an annuity and a pension *for each year of creditable service established* and retained *at the time of said designation* as provided in RCW 41.32.497.

RCW 28B.10.417 thus uses the time at which the trustees *designated* a faculty member as being subject to an annuity or retirement plan as the critical date by which to gauge the computation of future pension benefits to be paid by WSTRS. That portion of RCW 28B.10.417 which refers to the ultimate payment of a WSTRS pension bases it upon the years of *creditable service established at the time of*

---

[1] RCW 28B.10.417: "[A] faculty member . . . *designated* by the board of trustees of the . . . university . . . as being subject to an annuity or retirement income plan and *who,* at the time of such designation, is a *member of the* Washington state teachers' retirement *system, shall retain credit for such service in the . . . system* and . . . *shall leave his or her accumulated contributions in the . . . retirement fund.* Upon his or her *attaining eligibility for retirement under the . . . system,* such faculty member . . . *shall receive* from the . . . system *a retirement allowance consisting of* an annuity which shall be the actuarial equivalent of his or her accumulated contributions at his or her age when becoming eligible for such retirement and *a pension for each year of creditable service established and retained at the time of said designation* as provided in RCW 41.32.497 as now or hereafter amended." (Italics ours.)

*the original designation.* Clearly the time of designation of creditable service occurred at the 1957 transfer.

Appellants argue that by using the phrase "as provided in RCW 41.32.497", RCW 28B.10.417 thereby defers all regulation of retirement benefits to RCW 41.32.497. Appellants would have us virtually ignore RCW 28B.10.417. Unquestionably RCW 28B.10.417 defers computation of pensions to RCW 41.32.497, in part. The central question, however, is what is deferred and to what extent, so as not to render RCW 28B.10.417 meaningless.

 Viewed in this light, and considering the history of both sections, it is clear they are complementary parts of a total pension scheme. RCW 41.32.497 regulates the *amount to be received and how it is to be computed,* whereas RCW 28B.10.417 controls the *period of time to which* the *computed amounts relate.* Consequently, pursuant to RCW 41.32.497, one who transferred from WSTRS in 1957 is entitled to have his or her WSTRS pension calculated on the basis of the "two highest compensated consecutive years of service". But, under RCW 28B.10.417, the "two highest compensated consecutive years of service" must be related to a service period of "creditable service established and *retained at the time of said designation*" (italics ours), a period of time within which the individual still contributed and was a member of WSTRS. In short, the "two highest compensated consecutive years of service" must be years of creditable service as a contributing member of WSTRS and does not include postdesignation (*i.e.,* post–1957) employment years.

██ As we said in *Burlington N., Inc. v. Johnston,* 89 Wn.2d 321, 326, 572 P.2d 1085 (1977), an act must be construed as a whole giving effect to all the language used, considering all provisions in relation to each other and, if possible, harmonizing all to insure proper construction of each provision. As so construed, meaning is given to both RCW 28B.10.417 and RCW 41.32.497 and neither is denigrated. Appellants will receive what was created for them in 1957, *i.e.,* two retirement allowances: (1) a retirement

allowance from WSTRS based upon their service to the time of transfer to TIAA, and (2) a retirement allowance from TIAA for all subsequent service. The WSTRS benefits thus payable will coincide with the benefits payable to active, contributing members of WSTRS.

This interpretation is further supported by reference to other provisions of the retirement act. Appellants assert that all years an individual is employed by an "employer"[2] constitute years of "earnable compensation"[3] from which his or her two highest compensated consecutive years of service may be drawn. This, however, ignores the significance of RCW 41.32.350 which, in relevant part, provides that for each year of earnable compensation a member must contribute 5 percent of his or her salary prior to July 1, 1974, and 6 percent thereafter.

> 41.32.350 Contributions to annuity, disability reserve, and death benefit funds—Additional contributions. Each year during which he is employed each member shall contribute five percent of his earnable compensation. These contributions shall be placed in the annuity fund, the disability reserve fund and the death benefit fund. . . . *Provided*, That effective July 1, 1974, the amount of contribution required from each member by this section shall be increased to six percent of his earnable compensation.

Appellants concede they have not made the required contributions.

Accordingly, although RCW 41.32.497 and its underlying statutory definitions do not so specifically provide, RCW 41.32.350 makes it apparent the phrase "average earnable compensation for his two highest compensated consecutive years of service" includes only those years in which contributions were made to the WSTRS. To rule otherwise will render RCW 41.32.350 largely meaningless.

---

[2] RCW 41.32.010(12).

[3] RCW 41.32.010(11)(a).

In addition, we are convinced the trial court correctly concluded that it would be actuarially unsound to allow appellants to receive a WSTRS pension based upon their two highest compensated years of service during which no contributions were made to WSTRS. Appellants contend actuarial considerations do not apply to the pension portion of the WSTRS retirement benefits and that the contributions required by RCW 41.32.350 are used only to fund the annuity, death benefit, and disability reserve funds. It is obvious, however, that the contributions made by WSTRS members *are* employed in estimating the actuarial requirements of WSTRS. RCW 41.32.401 which controls disbursements from the State general fund for the purpose of meeting pension liability of the WSTRS system provides in relevant part:

41.32.401 Budget and appropriations—Transfers from state general fund. For the purpose of establishing and maintaining an actuarial reserve adequate to meet present and future pension liabilities of the system and to pay for one-half of the operating expenses of the system, the board of trustees at each regular July meeting next preceding a regular session of the legislature . . . shall compute the amount necessary to be appropriated during the next legislative session for transfer from the state general fund to the teachers' retirement system during the next biennium. Such computation shall provide for amortization of unfunded pension liabilities over a period of not more than fifty years from July 1, 1964. . . . The transfer of funds from the state general fund to the retirement system shall be at a rate determined by the board of trustees on the basis of the latest valuation prepared by the actuary employed by the board, and shall include a percentage contribution of the total earnable compensation of the members for the biennium for which the appropriation is to be made, to be known as the "normal contribution," and an additional percentage contribution of such earnable compensation, to be known as the "unfunded liability contribution." Such transfers from the general fund shall be made before the end of each calendar quarter at the rate determined by the board of trustees and shall be

computed on the basis of the members' total earnable compensation received for the quarter. The members' total contributions to the teachers' retirement fund for each quarter shall serve as the basis for determining the members' total earnable compensation for the quarter. The amounts transferred shall be distributed first to the teachers' retirement fund for the payment of pensions, survivors' benefits and the state's share of the operating expenses for the system, and the balance shall be credited to the teachers' retirement pension reserve fund.

It is clear that if the members of the class are entitled to retirement benefits based on years of service for which no contributions were made to WSTRS, the elimination of the WSTRS unfunded pension liability will be hampered.

We also note the WSTRS Board of Trustees has consistently interpreted RCW 41.32.497 to include only the years of service during which a member was making contributions to WSTRS. WAC 462–24–040, adopted by the WSTRS immediately following the enactment of RCW 41.32.497 in 1963,[4] provides in relevant part:

WAC 462–24–040 Computing the average earnable compensation. (1) In computing a member's average earnable compensation for his five highest compensated years of service, the computations shall include only the service during which a member was employed for salary or wages by a Washington employer and for which he established Washington membership service credit with the Retirement System. This excludes out–of–state service, military service and professional preparation or other service for which credit may have been established but for which no salary or wages were paid to the member by a Washington employer. Contributions based on sabbatical leave, paid sick leave, or other leave paid for by a Washington employer and for which credit has been established with the Retirement System shall be included in computing the earnable compensation. The last ten years from which the five highest compensated years of service are to be selected shall be the last ten years during which a member established Washington membership

---

[4]Laws of 1963, 1st Ex. Sess., ch. 14, § 16.

service credit, whether such service and credit were for a full year or a fraction of a year.

In interpreting a statute, great weight must be accorded to the contemporaneous construction placed upon it by officials charged with its enforcement, particularly where that construction has been accompanied by silent acquiescence of the legislative body over a long period of time. *Ball v. Smith,* 87 Wn.2d 717, 723, 556 P.2d 936 (1976); *Morin v. Johnson,* 49 Wn.2d 275, 300 P.2d 569 (1956).

■ Appellants assert the Board's construction of RCW 41.32.497 violates vested contractual rights established in 1957. We do not agree. Appellants have neither alleged nor established that their current WSTRS benefits are in any way lower or less advantageous than that established by Laws of 1957, ch. 76, § 4. Also appellants have failed to affirmatively demonstrate that the subsequent alterations of the WSTRS pension benefits were not reasonable modifications designed to keep the retirement system flexible and to maintain its integrity. *Weaver v. Evans,* 80 Wn.2d 461, 478, 495 P.2d 639 (1972).

The trial court is affirmed.

UTTER, C.J., and ROSELLINI, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.