[No. 40642-0-II.   Division Two.   December 20, 2011.]

NORTH CENTRAL WASHINGTON RESPIRATORY CARE SERVICES, INC., *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

618

Scott M. Edwards (of Lane Powell PC), for appellant.

Robert M. McKenna, Attorney General, and Donald F. Cofer, Senior Counsel, for respondent.

¶1 HUNT, J. — North Central Washington Respiratory Care Services Inc., d/b/a Whidbey Home Medical Equipment (Respiratory Care), appeals the superior court's dismissal of its appeal for a refund of $105,857.18 in state sales taxes from the State of Washington's Department of Revenue (Department). Respiratory Care argues that, because its "Continuous Positive Air Pressure" (CPAP) and "Bi-level Positive Air Pressure" (BiPAP) are prosthetic devices and/or orthotic devices, their sales were exempt from sales tax (1) from January 2001 through June 2004 under the "prosthestic devices" or "orthotic devices" sales-tax exemptions of former RCW 82.08.0283 (1998) and former RCW 82.08.0283 (2001)[1]; and (2) from July 2004 through September 2004, after the legislature enacted a statutory definition of "prosthetic devices" and eliminated "orthotic devices" from the sales tax exemptions in former RCW 82.08.0283 (2004). The superior court granted the Department partial summary judgment, ruling that,

---

[1] From January 2001 through June 2004 the legislature had no statutory definition of "prosthetic devices" or "orthotic devices."

whether battery-powered and worn on the body or plugged into an electrical outlet, neither the CPAP nor the BiPAP was a device exempt from sales tax. Agreeing with the trial court, we affirm.

## FACTS

### I. BACKGROUND

¶2 Respiratory Care provides CPAP and BiPAP devices to patients with obstructive sleep apnea, chronic obstructive pulmonary disease, and other respiratory conditions. Sleep apnea sufferers can experience both apnea and hypoapnea:[2] Both occur when "the patient's airway closes or becomes restricted due to [a] multitude of causes, including but not limited to, loss of airway muscle tone, loss of drive to breath, increased tissue in the throat, and anatomical abnormalities." Clerk's Papers (CP) at 9. "After a period of apnea/hypoapnea, an arousal from sleep is created in response to the oxygen deprivation and rising carbon dioxide levels which causes a reopening of the airway." CP at 9.

¶3 CPAP and BiPAP devices treat these breathing disorders and prevent disruptions of a patient's sleep in the following way:

> [Sleep apnea] patient[s] wear[ ] a mask that creates an airtight seal around the patient's nose and/or mouth. . . . The mask is connected by tubing to a device that delivers positive air pressure through the mask to the patient's airway thereby preventing the airway from collapsing during sleep.

CP at 11.

¶4 Respiratory Care "reported and paid retailing [Business & Occupation] tax on all CPAP and BiPAP [devices] sold in Washington during the period January 2001 through

---

[2] "Apnea" is "a cessation of airflow for at least ten seconds"; "hypoapnea" is "an abnormal respiratory event lasting at least ten seconds with significant reduction in airflow." Clerk's Papers at 9.

September 2004." CP at 5. But it did not collect sales tax on these transactions; consequently, it turned over no sales taxes on these sales to the Department. The Department audited Respiratory Care for the period of January 2001 through September 2004 and assessed $105,857.18 in "uncollected sales tax on its sales of CPAP and BiPAP [devices] on the theory that [CPAP and BiPAP devices] are not prosthetic or orthotic devices within the [applicable sales tax-exemption statute]." CP at 5. After an unsuccessful administrative appeal, Respiratory Care paid the Department the full assessment.

## II. PROCEDURE

¶5 Respiratory Care appealed to the Thurston County Superior Court under RCW 82.32.180, seeking a refund of the full assessment, plus interest. Respiratory Care moved for summary judgment, arguing that the CPAP and BiPAP devices satisfied the definitions of "prosthetic devices" or "orthotic devices" during the applicable tax periods.

¶6 The Department both opposed Respiratory Care's summary judgment motion and separately moved for partial summary judgment "as to all sales of CPAP and Bi-PAP devices that [Respiratory Care] made before July 1, 2004." CP at 54. The Department, however, claimed:

> There remains at this point a genuine issue of material fact as to sales occurring on or after July 1, 2004, . . . whether [Respiratory Care] sold any portable, self-contained models of CPAP devices in Washington during the period July through September 2004. If [Respiratory Care] did not, the Department is entitled to a summary judgment in its favor [regarding Respiratory Care's tax refund] as to those tax periods as well.

CP at 54.

¶7 Denying Respiratory Care's summary judgment motion and granting the Department's partial summary judgment motion, the superior court orally ruled that (1) it "did not find one particular dictionary definition or medical

dictionary definition controlling" for the pre-July 1, 2004 "prosthetic" and "orthotic devices" sales-tax exemptions, but that "these [CPAP and BiPAP] devices do not fit under the ordinary definition of prosthetic devices or orthotic devices"; and (2) based on the post-June 30, 2004 statutory definition of "prosthetic devices," any device that has "a part[ ] that is required to be part of this device, that is plugged in and is separate and apart from the body" is not a statutorily defined prosthetic device. Verbatim Report of Proceedings (VRP) (July 17, 2009) at 58-59.

¶8 Respiratory Care then asked the superior court to "clarify the ordinary meaning of prosthetic and orthotic devices." VRP (July 17, 2009) at 60. The superior court replied, "I don't think I am required to dictate a specific meaning of the prosthetic devices. . . . I do not make a finding that [the pre-July 1, 2004 ordinary meaning of 'prosthetic device'] required that a device replace a missing body part. I am not making that finding in order to rule on this motion." VRP (July 17, 2009) at 60. The superior court also declined to explain why the CPAP and BiPAP devices did not satisfy the pre-July 1, 2004 ordinary meaning of "prosthetic devices." VRP (July 17, 2009) at 60.

¶9 Concluding that there was no genuine issue of material fact "as to taxes assessed on sales of CPAP and BiPAP equipment during the period January 2001 through June 2004," the superior court ruled, "[a]s a matter of law, [Respiratory Care] is not entitled to any refund for the period January 2001 through June 2004" and dismissed that part of Respiratory Care's tax refund appeal.[3] CP at 248. The superior court "reversed" the Department's tax

---

[3] More specifically, the superior court ruled:

The version of [former] RCW 82.08.0283 [(2004)] in effect from July 2004 through September 2004 required that "prosthetic devices" must be "worn on the body." A genuine issue of material fact remains whether [Respiratory Care] sold CPAP or BiPAP devices during the period from July 2004 through September 2004 that are "worn on the body" under the revised statute.

CP at 248 (quoting former RCW 82.08.0283).

assessment on Respiratory Care's sales of these devices between July and September 2004, (1) making the applicability of sales tax to that period an open question; and (2) leaving the parties to resolve the factual question of whether, during the July-September 2004 period, Respiratory Care sold any CPAP or BiPAP devices that were "worn on the body" and, therefore, subject to sales tax. VRP (July 17, 2009) at 60. To resolve this issue of material fact, Respiratory Care stipulated that, between July 2004 to September 2004, it "did not sell any battery-powered CPAP devices in Washington; all of the CPAPs and BiPAPs that it sold in Washington during the period July 2004 to September 2004 were required to be plugged in." CP at 248, 250.

¶10 Apparently concluding that the plugged-in versions of CPAP and BiPAP devices were not "worn on the body" under former RCW 82.08.0283 (2004), the trial court dismissed Respiratory Care's "refund claims for the period July 2004 to September 2004" and apparently reinstated the Department's assessment of taxes on Respiratory Care's sales between July and September 2004. CP at 251.

¶11 Respiratory Care appeals.

## ANALYSIS

¶12 Respiratory Care argues that the superior court erred in granting partial summary judgment to the Department and in dismissing Respiratory Care's sales tax refund claims. Respiratory Care's argument has two parts: (1) Before July 1, 2004, CPAP and BiPAP devices were exempt from sales tax because they satisfied the "ordinary meaning of" either a "prosthetic device" or an "orthotic device," both of which were exempt from sales tax under former RCW 82.08.0283 (1998) and former RCW 82.08.0283 (2001);[4] and (2) after June 30, 2004, CPAP and BiPAP devices were exempt from sales tax because they met the statutory

---

[4] Br. of Appellant at 6, 10.

definition of "prosthetic devices," which were exempt under former RCW 82.08.0283 (2004). Respiratory Care's arguments fail.

## I. STANDARDS OF REVIEW

■■ ¶13 We review questions of statutory construction de novo. *Skagit County Pub. Hosp. Dist. No. 1. v. Dep't of Revenue*, 158 Wn. App. 426, 437, 242 P.3d 909 (2010). "When called on to interpret a statute, our fundamental obligation is to give effect to the legislature's intent." *Skagit County*, 158 Wn. App. at 437. We first look to the statute's plain language, which we may "discern[ ] 'from all that the legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.' " *Skagit County*, 158 Wn. App. at 437 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). "If the plain language is subject to only one interpretation, our inquiry ends because plain language does not require construction." *Skagit County*, 158 Wn. App. at 437. Here, however, the plain language of the statutes at issue does not disclose legislative intent about the provisions in question. Thus, we must look elsewhere for the definitions of "prosthetic device" and "orthotic device."

■ ¶14 "Absent . . . a statutory definition, we give the words in a statute their common and ordinary meaning. To determine the plain meaning of an undefined term, we may look to the dictionary." *Skagit County*, 158 Wn. App. at 437 (citation omitted). When a statute is "susceptible of more than one reasonable interpretation, we defer to the Department's interpretation of the statute if that interpretation does not conflict with the statutory language and is within the agency's expertise." *New W. Fisheries, Inc. v. Dep't of Revenue*, 106 Wn. App. 370, 377, 22 P.3d 1274 (2001). And we "avoid interpreting a statute in a way that leads to an absurd result," which we "presume the legislature did not intend." *Puget Sound Energy v. Dep't of Revenue*, 158 Wn.

App. 616, 621, 248 P.3d 1043 (2010), *review denied*, 171 Wn.2d 1010 (2011).

▋ ¶15 We must construe tax law exemptions narrowly: Taxation is the rule and exemption is the exception; and anyone claiming a benefit or deduction from a taxable category has the burden of showing that he qualifies for it. *Budget Rent-A-Car of Wash.-Or., Inc. v. Dep't of Revenue*, 81 Wn.2d 171, 174-75, 500 P.2d 764 (1972). We construe "a tax exemption statute that creates 'doubt or ambiguity'" strictly "'*against the taxpayer*,'" "'though fairly and in keeping with the ordinary meaning of [its] language.'" *Sacred Heart Med. Ctr. v. Dep't of Revenue*, 88 Wn. App. 632, 637, 946 P.2d 409 (1997) (alteration in original) (emphasis added) (quoting *Grp. Health Coop. of Puget Sound, Inc. v. Wash. State Tax Comm'n*, 72 Wn.2d 422, 429, 433 P.2d 201 (1967)).

## II. PRE-JULY 1, 2004 "PROSTHETIC DEVICES"

¶16 From January 1, 2001, through June 30, 2004, former RCW 82.08.0283 (1998) and former RCW 82.08.0283 (2001) exempted sales of "prosthetic devices" from sales tax. Neither statute, however, contained a definition of "prosthetic devices" for this sales tax exemption purpose.

¶17 Without attempting to craft a definition or to refer to other potential definitions, the superior court ruled that CPAP and BiPAP devices did not fall within the pre-July 1, 2004 statutory sales-tax exemption for "prosthetic devices."[5] VRP (July 17, 2009) at 59. Arguing that this ruling was erroneous, Respiratory Care urges us to adopt an expansive definition of "prosthetic devices" to include things that

---

[5] Respiratory Care asserts that "the Superior Court rejected the Department's argument that the ordinary meaning of prosthetic device requires a replacement of a missing body part." Br. of Appellant at 9. In fact, that ruling came later; at the time the superior court granted the Department's motion for partial summary judgment on the initial tax period in issue, the court ruled, "I do not make a finding that [the pre-July 1, 2004 ordinary meaning of prosthetic device] required that a device replace a missing body part. I am not making that finding in order to rule on this motion." VRP (July 17, 2009) at 60.

"augment the function of a malfunctioning body part," including CPAP and BiPAP devices because they "assist[ ] or replac[e] the function of the patient's malfunctioning airway." Br. of Appellant at 9, 10. The Department responds that we should limit the pre-July 1, 2004 "prosthetic devices" sales-tax exemption to things that are artificial substitutes for body parts; the Department then argues that CPAP and BiPAP devices "cannot reasonably be characterized" as artificial substitutes for body parts. Br. of Resp't at 30. We agree with the Department.

A. Dictionary Definition of "Prosthetic Devices"

¶18 In the absence of a statutory definition, we may look to the dictionary for common and ordinary meaning of "prosthetic device." *Webster's Third New International Dictionary* defines "prosthetic" as "of or relating to prosthesis or prosthetics." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1822 (1969). *Webster's* defines "prosthesis" as "an artificial device to replace a missing part of the body (as a suction socket to replace a lower leg or a dental restoration)";[6] and *Webster's* defines "prosthetics" as "the surgical and dental specialties concerned with the artificial replacement of missing parts." *Id.* Under these definitions, CPAP and BiPAP devices are not "prosthetic devices" under former RCW 82.08.0283 (1998) and former RCW 82.08.0283 (2001) because they are not things that physically imitate and substitute for body parts,[7] especially in light of the rule

_____

[6] *Id.*

[7] Respiratory Care cites *Stedman's Medical Dictionary* (28th ed. 2000), which defines "prosthetic" as "[r]elating to a prosthesis or an artificial part." STEDMAN'S MEDICAL DICTIONARY 1578 (28th ed. 2005). *Stedman's* defines "prosthesis" as a "[f]abricated substitute used to assist a damaged or replace a missing body part; or to augment or stabilize a hypoplastic structure." *Id.* Respiratory Care argues that, according to *Stedman's*, CPAP and BiPAP devices are "prosthetic devices" because they " 'assist a damaged . . . body part.' " Br. of Appellant at 7 (quoting STEDMAN'S, *supra*, at 1578). But Stedman's "prosthesis" definition reads the way Respiratory Care contends only if taken out of context. In contrast, Stedman's full definition of "prosthesis," taken in context, also lists several examples of prostheses, including hearing aids, artificial heart valves, tooth replacements, artificial

of statutory construction that we resolve a statutory tax exemption that creates doubt or ambiguity against Respiratory Care. *Sacred Heart*, 88 Wn. App. at 637.

## B. Department's Interpretation

¶19 In the absence of a statutory definition, we may also defer to the Department's interpretation of an ambiguous term. Relying on WAC 458-20-18801(5)(e), administrative law judges' decisions and an "Excise Tax Bulletin," both parties contend that the Department's pre-July 1, 2004 interpretation of "prosthetic devices" supports their respective arguments. Again, the Department prevails.

### 1. WAC 458-20-18801(5)(e)

¶20 In 1983, the Department amended the existing version of WAC 458-20-18801 (promulgated in 1978) to exempt

eye implants, and artificial joint replacements. *See* STEDMAN'S, *supra*, at 1578. These examples demonstrate that Stedman's "prosthesis" definition contemplates things that physically imitate and substitute for body parts, similar to the *Webster's* definition.

Respiratory Care also offers a number of other definitions from *Random House Webster's Unabridged Dictionary*, *Taber's Cyclopedic Medical Dictionary* (2002), and *Merriam-Webster's Medical Desk Dictionary*, which, similarly to the *Webster's* definition above, define "prosthetics devices" as "replacement of missing parts with artificial structures" and "prosthesis" as "a device, either external or implanted, that substitutes for or supplements a missing or defective part of the body," RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1553 (2d ed. 1998), and "an artificial device to replace a missing part of the body." MERRIAM-WEBSTER'S MEDICAL DESK DICTIONARY 659 (1996). *See* Br. of Appellant at 7.

The Department cites *Dorland's Illustrated Medical Dictionary*, which, consistent with *Webster's* definition, defines "prosthetic" as "serving as a substitute; pertaining to the use or application of prostheses." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1472 (29th ed. 2000). *Dorland's*, in turn, defines "prosthesis" as "an artificial substitute for a missing body part, such as an arm or leg, eye or tooth, used for functional or cosmetic reasons, or both." *Id. Dorland's* definition of "prosthesis" further supports the Department's argument that the pre-July 1, 2004 sales tax exemption of "prosthetic devices" did not include CPAP and BiPAP devices.

We do not view these various definitions as conflicting for the purposes of deciding legislative intent here. *See Deaconess Med. Ctr. v. Dep't of Revenue*, 58 Wn. App. 783, 787-88, 795 P.2d 146 (1990). On the contrary, these various definitions support the superior court's ruling that CPAP and BiPAP devices were not "prosthetic devices" within former RCW 82.08.0283 (1998) and former RCW 82.08.0283 (2001) exemptions of "prosthetic devices" from sales taxes from January 1, 2001, through June 30, 2004.

"prosthetic . . . devices" from the sales tax. Wash. St. Reg. 83-07-032. In 1987, the Department amended this 1983 version of WAC 458-20-18801 to include a definition of "prosthetic devices." Wash. St. Reg. 87-05-042. In 1992, the Department again amended former WAC 458-20-18801 (1987), which has since remained unchanged. Wash. St. Reg. 92-05-065. The relevant part of this current rule reads:

> The retail sales tax does not apply to sales of prosthetic devices, orthotic devices prescribed by physicians, osteopaths, or chiropractors, nor to sales of ostomic items. (See RCW 82.08.0283.) Sutures, pacemakers, hearing aids, and kidney dialysis machines are examples of prosthetic devices. Drainage devices which are particularly prescribed for use on or in a specific patient are exempt from sales or use taxes as prostheses because they either replace missing body parts *or assist dysfunctional ones*, either on a temporary or permanent basis. A prosthetic device can include a device that is implanted for cosmetic reasons. Hearing aids are also exempt when dispensed or fitted by a person licensed under chapter 18.35 RCW. A heart-lung machine used by a hospital in its surgical department is not an exempt prosthetic device.

WAC 458-20-18801(5)(e) (emphasis added).

¶21 Respiratory Care contends that WAC 458-20--18801(5)(e) supports its interpretation of "prosthetic devices" in two ways: (1) This regulation defines "prosthetic devices" as those that " 'either replace missing body parts *or assist dysfunctional ones*' "; and (2) the regulation lists " 'sutures, pacemakers, hearing aids and kidney dialysis machines' " as examples of "prosthetic devices." Br. of Appellant at 8 n.3 (quoting WAC 458-20-18801(5)(e)). The Department counters that (1) WAC 458-20-18801(5)(e) makes the statement about " 'replac[ing] missing body parts or assist[ing] dysfunctional ones' " "only in connection with 'drainage devices' ";[8] (2) this regulation provides "no explanation for why it listed sutures, pacemakers, hearing

---

[8] Br. of Resp't at 27 (quoting WAC 458-20-18801(5)(e)).

aids, and kidney dialysis machines" as examples of prosthetic devices,[9] which contradicts former RCW 82.08.0283 (1998) and former RCW 82.08.0283 (2001) because these items are not "artificial substitutes that replace missing parts of the body";[10] (3) these listed items are also "inconsistent" with the definition of "prosthetic device" under WAC 458-20-18801(1)(f);[11] and (4) "[i]f the Department erred in treating some of those other devices as if they were exempt 'prosthetic devices,' the appropriate response is not to extend that error to every other medical device as well." Br. of Resp't at 28.

¶22 We agree with the Department that WAC 458-20-18801(5)(e)'s definition of "prosthetic devices" as things that "assist dysfunctional" body parts uses this phrase in reference to only "drainage devices" and that this regulation's examples go beyond former RCW 82.08.0283's definition of "prosthetic devices" as things that physically imitate and substitute for body parts. Br. of Resp't at 27 (quoting WAC 458-20-18801(5)(e)). Conversely, WAC 458-20-18801(5)(e)'s examples do not support Respiratory Care's argument because although the regulation is entitled to "great weight," regulations "cannot amend or modify the statute in question." *Pierce County v. State*, 66 Wn.2d 728, 731, 404 P.2d 1002 (1965); *see also Coast Pac. Trading, Inc. v. Dep't of Revenue*, 105 Wn.2d 912, 917-18, 719 P.2d 541 (1986) (rejecting taxpayer's argument that the Department could use a regulation "to expand the tax immunity of exporters beyond the exemptions provided by statute or required by the

---

[9] Br. of Resp't at 27.

[10] Br. of Resp't at 30.

[11] Br. of Resp't at 28. WAC 458-20-18801(1)(f) defines "prosthetic devices" as "artificial substitutes which generally replace missing parts of the human body, such as a limb, bone, joint, eye, tooth, or other organ or part thereof, and materials which become ingredients or components of prostheses." Effective March 20, 1992, the Department amended former WAC 458-20-18801(1)(f) (1987) by replacing the word "physically" with "generally." Wash. St. Reg. 92-05-065.

constitution").[12] We further note that the Department's reasoning is consistent with the principle that "a tax exemption statute that creates 'doubt or ambiguity' must 'be construed strictly' " against Respiratory Care. *Sacred Heart*, 88 Wn. App. at 637 (quoting *Grp. Health Coop.*, 72 Wn.2d at 429).

## 2. Excise Tax Bulletin

¶23 The legislature first exempted "prosthetic devices" from sales tax in 1975 as part of an amendment to former RCW 82.08.030 (1974).[13] LAWS OF 1975, 1st Ex. Sess., ch. 291, § 10(30). As we have previously noted, this statute did not define "prosthetic devices." But RCW 34.05.230(1) provides, "An agency is encouraged to advise the public of its current opinions, approaches, and likely courses of action by means of interpretive or policy statements. Current interpretive and policy statements are advisory only." Thus, shortly after, the legislature promulgated the former RCW 82.08.030 tax exemption, the Department issued Excise Tax Bulletin 498.08.151 (1975), which defined "prosthetic devices" as follows:

> For purposes of administration of this [prosthetic devices] exemption "prosthetic devices" are artificial substitutes which replace missing parts of the human body, such as a limb, bone, joint, eye, tooth, or other internal or external organ or part thereof.

---

[12] Respiratory Care next argues that the Department's "own published precedents have repeatedly affirmed that the ordinary meaning of prosthetic *includes* devices that supplement, augment, or assist an impaired, damaged, or defective body part," citing three decisions of the Department's Interpretation and Appeals Division's decisions. Br. of Appellant at 7-8. We do not need to defer to these decisions because "an [administrative law judge]'s construction of [a] statute does not necessarily indicate the *agency's* interpretation." *Dep't of Labor & Indus. v. Davison*, 126 Wn. App. 730, 735, 109 P.3d 479 (2005). Furthermore, such administrative law judges' decisions are not binding here; therefore, we do not further address this issue. *See Walthew, Warner, Keefe, Arron, Costello & Thompson v. Dep't of Revenue*, 103 Wn.2d 183, 186, 691 P.2d 559 (1984).

[13] *Repealed by* LAWS OF 1980, ch. 37, § 81.

The term "prosthetic devices" does not include . . . devices or apparatus used primarily to assist or supplement the functioning of existing parts of the body, such as wheelchairs, crutches, orthopedic shoes, hearing aids, pacemakers, trusses, braces, slings, casts, and the like.

CP at 99. Although advisory only, this 1975 "Excise Tax Bulletin" is consistent with the dictionary definitions of "prosthetic devices."

¶24 Furthermore, we may examine this bulletin in light of the "contemporaneous construction" "doctrine," which "accords 'great weight . . . to the contemporaneous construction placed upon [the statute] by officials charged with its enforcement, particularly where that construction has been accompanied by silent acquiescence of the legislative body over a long period of time.' " *Stroh Brewery Co. v. Dep't of Revenue*, 104 Wn. App. 235, 242, 15 P.3d 692, *review denied*, 144 Wn.2d 1002 (2001) (first alteration in original) (quoting *Newschwander v. Bd. of Trs. of the Wash. State Teachers' Ret. Sys.*, 94 Wn.2d 701, 711, 620 P.2d 88 (1980)).[14] Excise Tax Bulletin 498.08.151, which the Department promulgated almost 28 years before the legislature adopted its own statutory definition of "prosthetic devices,"[15] clearly does not contemplate that CPAP and BiPAP devices are "prosthetic devices." Thus, Excise Tax Bulletin 498.08.151 (1975) also supports the Department's argument that, before July 1, 2004, CPAP and BiPAP devices were not "prosthetic devices" for sales tax exemption purposes under former RCW 82.08-.0283 (1998) and former RCW 82.08.0283 (2001).

---

[14] *See also Overton v. Econ. Assistance Auth.*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981) ("Where an administrative agency is charged with administering a special field of law and endowed with quasi-judicial functions because of its expertise in that field, the agency's construction of statutory words and phrases and legislative intent should be accorded substantial weight when undergoing judicial review.").

[15] *See* Laws of 2003, ch. 168, § 409.

## C. Foreign Authority

¶25 In the absence of Washington case law on point, we find instructive and persuasive a South Carolina Supreme Court decision that the Department cites, *Home Medical Systems, Inc. v. South Carolina Department of Revenue*, 382 S.C. 556, 677 S.E.2d 582, *reh'g denied*, 2009 S.C. LEXIS 293 (2009). The taxpayer in *Home Medical Systems* argued that several medical devices, including CPAP and BiPAP devices, fit South Carolina's statutory and administrative definitions of "prosthetic devices." *Home Med. Sys.*, 677 S.E.2d at 583-84. South Carolina statutory law exempted from its sales tax " 'prosthetic devices sold by prescription.' " *Id.* at 586 (quoting S.C. CODE ANN. § 12-36-2120(28)(a) (2000 & Supp. 2008)[16]). The South Carolina Department of Revenue (DOR) promulgated a regulation defining a "prosthetic device" as " 'an artificial device to replace a missing part of the body.' " *Home Med. Sys.*, 677 S.E.2d at 586 (quoting S.C. CODE ANN. REGS. § 117-332 (Supp. 2008)). Disagreeing with the South Carolina DOR's definition of "prosthetic devices," an administrative law court (ALC) ruled that (1) the DOR's definition "was inconsistent with 'current medical definitions and as such should be rejected' "; (2) all of the items that the taxpayer sold were "prosthetic devices"; and (3) " 'the definition of prosthetic device has been updated as the field of medicine has progressed.' " *Home Med. Sys.*, 677 S.E.2d at 587.

¶26 When the South Carolina DOR appealed, South Carolina's Supreme Court reversed the ALC, holding that (1) the 2003 revenue ruling's definition of "prosthetic devices," excluding things that merely replace missing functions, was "consistent" with the "primary definition" of many different sources that the taxpayer cited; (2) the ALC was not "empowered to invalidate an otherwise proper

---

[16] *Invalidated by Am. Petroleum Inst. v. S.C. Dep't of Revenue*, 382 S.C. 572, 575-79, 677 S.E.2d 16 (2009).

regulatory definition" simply because at least "one current, accepted definition in the medical community . . . encompasses . . . a device to replace missing functionality"; and (3) "the ALC's ruling that the regulatory definition was not sufficiently expansive goes against the rule that a statutory exemption must be strictly construed against the taxpayer." *Home Med. Sys.*, 677 S.E.2d at 583, 587.

¶27 A primary premise of *Home Medical Systems* is the principle that "a tax exemption statute that creates 'doubt or ambiguity' must 'be construed strictly' " against the taxpayer, a principle of statutory construction that is also well-settled in our state. *Sacred Heart*, 88 Wn. App. at 637 (quoting *Grp. Health Coop.*, 72 Wn.2d at 429); *Home Med. Sys.*, 677 S.E.2d at 587. *Home Medical Systems* also acknowledges that, although there may be other expansive, accepted definitions within the medical community, the "primary definition" of most sources excluded the CPAP and BiPAP devices from the category of "prosthetic devices." *Home Med. Sys.*, 677 S.E.2d at 587. And, just as the taxpayer failed to persuade the South Carolina Supreme Court in *Home Medical Systems*, Respiratory Care fails to persuade us to define CPAP and BiPAP as "prosthetic devices" simply because other potential definitions exist. *Home Med. Sys.*, 677 S.E.2d at 587.

¶28 Accordingly, we affirm the superior court's summary judgment ruling that CPAP and BiPAP devices were not "prosthetic devices" and, therefore, not exempt from sales tax under the pre-July 1, 2004 statute.

III. Pre-July 1, 2004 "Orthotic Devices"

¶29 In 1980, the legislature amended former RCW 82.08.0283 (1979) by exempting from sales tax, among other things, "orthotic devices." Laws of 1980, ch. 86, § 1. As was the case with "prosthetic devices," this amendment did not define "orthotic devices" for sales tax exemption purposes. The superior court ruled that CPAP and BiPAP

devices sold before July 1, 2004, were not "orthotic devices" under former RCW 82.08.0283 (1998) and former RCW 82.08.0283 (2001). VRP (July 17, 2009) at 58-59. Respiratory Care argues that this ruling was erroneous and urges us to adopt a definition of "orthotic devices" to include things that "support and improve the function of . . . a moving part of the body"—including CPAP and BiPAP devices, which "support or align the patient's airway to improve the function of that moveable part of the patient's body." Br. of Appellant at 10-11.

¶30 The Department urges us to hold that CPAP and BiPAP devices are not "orthotic devices" because "[t]hey do not correct deformities or improve the function of the patient's spine or limbs." Br. of Resp't at 35. Respiratory Care asserts that "the Department fails to . . . present supporting authority suggesting what function braces, collars, casts, and splints perform that CPAPs/BiPAPs do not." Br. of Appellant at 11. Again, we agree with the Department.

A. Legislative History

¶31 In the absence of a statutory definition, we may look to legislative history to discern the pre-July 1, 2004 definition of "orthotic devices." *See Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 164 Wn.2d 310, 318, 190 P.3d 28 (2008). During the 1980 legislative session in which the legislature exempted "orthotic devices" from sales tax, the following exchange between legislators took place:

Ms. Sommers:[17] "For the purposes of clarifying the definition and to recognize the work the Revenue Committee did on this definition, would you please tell us what is an orthotic device? Could recreational equipment, such as football helmets and pads, be considered an orthotic device?"

---

[17] Representative Helen Sommers was then co-chair of the Revenue Committee.

Ms. Craswell:[18] "An orthotic device, as defined by the Revenue Committee, is intended to mean *an appliance or apparatus used to support, align or correct deformities or to improve the function of moveable parts of the body*. For example, a *brace used to align or relieve a low-back injury* would be an orthotic device. As far as recreational equipment, such as football helmets, qualifying under this definition, no, they couldn't. It would have to be something which is prescribed for a particular physical impairment or injury."

HOUSE JOURNAL, 46th Leg., Reg. Sess., at 548 (Wash. 1980) (emphasis added). The Department also cites the 1980 Final Legislative Report, which contained a description of House Bill 1841's[19] definition of an "orthotic device" as " 'a medical device used to support or control a part of the body (such as braces, crutches, and corsets).' " Br. of Resp't at 35 (quoting 1980 FINAL LEGISLATIVE REPORT, 46th Wash. Leg., at 42). This legislative history supports the Department's position that the CPAP and BiPAP devices were not "orthotic devices" under former RCW 82.08.0283 (1998) and former RCW 82.08.0283 (2001) before July 1, 2004.

## B. Department's Interpretation

¶32 Both parties argue that the Department's pre-July 1, 2004 interpretation of "orthotic devices" supports their definitions, relying on WAC 458-20-18801(1)(g), administrative law judge decisions, and an Excise Tax Bulletin. Because administrative law decisions are not controlling precedent[20] and the WAC definition is dispositive, we do not address the cited administrative law decisions.

---

[18] Representative Ellen Craswell was also then co-chair of the Revenue Committee.

[19] House Bill 1841 was the legislation that created the sales tax exemption for orthotic devices. *See* HOUSE JOURNAL, 46th Leg., Reg. Sess., at 548 (Wash. 1980).

[20] The Department's Interpretation and Appeals Division's ALJ decisions are not entitled to deference because they do not represent necessarily the Department's own position. *See, e.g., Davison*, 126 Wn. App. at 735.

## 1. WAC 458-20-18801(1)(g)

¶33 Respiratory Care points out that the Department's own rule defines "orthotic devices" as those " 'designed to activate or supplement a weakened or atrophied limb or function' ";[21] but Respiratory Care provides only a partial definition from this administrative code provision. The full definition of "orthotic devices" provides specific examples, which inform the stated definition:

> "Orthotic devices" are apparatus designed to activate or supplement a weakened or atrophied limb or function. They include braces, collars, casts, splints, and other similar apparatus as well as parts thereof. Orthotic devices do not include durable medical equipment such as wheelchairs, crutches, walkers, and canes nor consumable supplies such as embolism stockings, arch pads, belts, supports, bandages, and the like, whether prescribed or not.

WAC 458-20-18801(1)(g).

¶34 Respiratory Care highlights the language " 'designed to activate or *supplement a weakened* or atrophied limb or *function*,' "[22] contending that CPAP and BiPAP devices are "orthotic devices" because "they support or align the patient's *airway* to improve the function of that moveable part of the patient's body." Br. of Appellant at 11 (emphasis added). We do not find persuasive Respiratory Care's argument because by taking some WAC 458-20--18801(1)(g) language out of context, it (1) distorts the regulation's definition; and (2) contravenes the rule of statutory construction that, in order to ascertain the statute's plain meaning, we look "not only to the ordinary meaning of the language at issue but also to the general context of the statute." *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 159 Wn. App. 104, 112, 246 P.3d 211 (2010), *review*

---

[21] Br. of Appellant at 11 (emphasis omitted) (quoting WAC 458-20-18801(1)(g)).

[22] Br. of Appellant at 11 (quoting WAC 458-20-18801(1)(g)).

*granted*, 171 Wn.2d 1016 (2011). WAC 458-20-18801(1)(g) lists "braces, collars, casts, [and] splints" as examples of orthotic devices, all of which are designed to treat only the limbs, the spine, and/or the musculoskeletal system, not the respiratory system. Thus, we reject Respiratory Care's expansive interpretation of the regulation's use of the word "function" as encompassing every possible bodily function. Such interpretation would lead to an "absurd result," which we avoid. *Puget Sound Energy*, 158 Wn. App. at 621.

## 2. Excise Tax Bulletin

¶35 In 1980, the legislature exempted "orthotic devices" from sales tax. LAWS OF 1980, ch. 86, § 1. That same year, the Department issued Excise Tax Bulletin 518.08.168.188, which defined "orthotic devices" as

> fitted surgical apparatus designed to activate or supplement a weakened or atrophied limb or function. This includes braces, collars, casts, splints, and other specially fitted apparatus, and parts therefore.
>
> For purposes of these exemptions orthotic devices do not include such durable medical equipment as wheelchairs, crutches, walkers, canes, elastic stockings, arch pads, belts, supports, bandages, and the like, whether prescribed or not.

¶36 Although this Excise Tax Bulletin is advisory only, *see* RCW 34.05.230(1), as we have previously noted, we may "accord[ ] 'great weight' " to it under the "contemporaneous construction" doctrine especially because the legislature never provided its own definition. *Stroh Brewery*, 104 Wn. App. at 242 (quoting *Newschwander*, 94 Wn.2d at 711). Excise Tax Bulletin 518.08.168.188 is further support for the Department's argument that the CPAP and BiPAP devices were not "orthotic devices" entitled to sales tax exemption under former RCW 82.08.0283 (1998) and former RCW 82.08.0283 (2001) before July 1, 2004.

## C. Dictionary Definitions

¶37 Respiratory Care quotes *Dorland's Illustrated Medical Dictionary* to define "orthotic" as a device " 'used to support, align, prevent, or correct deformities or to improve the function of movable parts of the body.' " Br. of Appellant at 10 (emphasis omitted) (quoting DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (26th ed. 2000)). But, as the Department notes, Respiratory Care quotes only a partial definition of "orthosis"²³ from *Dorland's*, which actually defines "orthosis" as

> an *orthopedic* appliance or apparatus used to support, align, prevent, or correct deformities or to improve the function of movable parts of the body.

DORLAND'S, *supra*, at 1280 (emphasis added). *Dorland's* further defines "orthopedic" as "pertaining to the correction of deformities of the musculoskeletal system; pertaining to orthopedics" and "orthopedics" as "that branch of surgery which is specially concerned with the preservation and restoration of the function of the skeletal system, its articulations, and associated structures." *Id.*

¶38 The Department is also correct in noting that *Stedman's Medical Dictionary* 1384 (28th ed. 2006) "reflects that the ordinary meaning of 'orthotic device' is a medical device related to the musculoskeletal system, not the respiratory system as [Respiratory Care] argues." Br. of Resp't at 32. *Stedman's* defines "orthotics" as "[t]he science concerned with the making and fitting of orthopaedic appliances." STEDMAN'S, *supra*, at 1384 (28th ed. 2006). *Stedman's* further defines (1) "orthopaedic" as "[r]elating to orthopedics"; (2) "orthopedics" as "[t]he medical specialty concerned with the preservation, restoration, and development of form and function of the musculoskeletal system, extremities, spine, and associated structures by medical, surgical, and physical

---

²³ Br. of Resp't at 33 n.28.

methods"; and (3) "orthosis" as "[a]n external orthopaedic appliance, e.g., a brace or splint, that prevents or assists movement of the spine or the limbs." *Id.* at 1383-84.

¶39 The medical dictionary definitions exclude CPAP and BiPAP devices from the definition of "orthotic devices," which concern the musculoskeletal system, not the respiratory system. Thus, Respiratory Care's proposed definition fails.

¶40 We affirm the superior court's summary judgment ruling that before July 1, 2004, CPAP and BiPAP devices were not "orthotic devices" for sales tax exemption purposes under former RCW 82.08.0283 (1998) and former RCW 82.08.0283 (2001).

IV. POST-JUNE 30, 2004 "PROSTHETIC DEVICES"

¶41 Effective July 1, 2004, the legislature deleted "orthotic devices" from the sales tax exemption. LAWS OF 2003, ch. 168, §§ 1, 409, 903. Thus, the only post-June 30, 2004 definition at issue here is for "prosthetic devices." As of July 1, 2004, former RCW 82.08.0283 added the following definition of "prosthetic device":

> "Prosthetic device" means a replacement, corrective, or supportive device, including repair and replacement parts for a prosthetic device, *worn on or in the body* to:
>
> (i) Artificially replace a missing portion of the body;
>
> (ii) Prevent or correct a physical deformity or malfunction; or
>
> (iii) Support a weak or deformed portion of the body.

LAWS OF 2003, ch. 168, § 409(3)(a) (emphasis added).[24]

¶42 Here, the superior court explained, "[T]he issue [of the post-June 30, 2004 statutory definition of 'prosthetic devices'] comes down to whether these devices are worn on the body and the meaning of the phrase 'worn on the body.' "

---

[24] The legislature subsequently amended RCW 82.08.0283 in 2007. LAWS OF 2007, ch. 6, § 1101. This amendment does not affect this appeal.

VRP (July 17, 2009) at 59. The superior court found that "[a device] is not worn on the body if it has a part, that is required to be part of this device, that is plugged in and is separate and apart from the body." VRP (July 17, 2009) at 59. The superior court continued, "In making this ruling, I recognize the illogical dichotomy between those devices that are portable and are not portable, but I feel constrained to follow the authorities that require me to interpret the phrase 'worn on the body' as best I can." VRP (July 17, 2009) at 59-60.

¶43 Subsequently, Respiratory Care stipulated that, between July 2004 and September 2004, it "did not sell any battery-powered CPAP devices in Washington; all of the CPAPs and BiPAPs that it sold in Washington during the period July 2004[,] to September 2004 were required to be plugged in." CP at 250. The trial court then dismissed Respiratory Care's "refund claims for the period July 2004 to September 2004." CP at 251.

¶44 Arguing that the superior court erred, Respiratory Care now focuses its argument on the meaning of "worn on" under former RCW 82.08.0283(4)(a) (2004). See Br. of Appellant at 12. Respiratory Care asks us to reject the superior court's requirement that the patient " 'wholly' " wear the device in order for it to be " 'worn on' the body." Br. of Appellant at 14 (quoting former RCW 82.08.0283 (2004)). Instead, Respiratory Care urges us to adopt the "ordinary meaning of worn" as " 'to bear or have upon the person . . . to have attached to the body or part of it.' " Br. of Appellant at 15 (emphasis omitted) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)). Respiratory Care then contends that, because CPAP and BiPAP devices both have a "specially fitted mask that creates an airtight seal around the patient's nose and/or mouth and is connected by tubing" to the rest of the device; these devices are "worn by the patient (attached to the patient's body) to the same extent *regardless of whether the equipment is battery-powered or plugged in.*" Br. of Appellant at 15 (emphasis added).

¶45 The Department counters that the meaning of "worn on" requires that the patient wear the *entire device* . . . 'on or in the body.' " Br. of Resp't at 10 (emphasis added) (quoting former RCW 82.08.0283(4)(a) (2004)). Therefore, the Department argues that the CPAP and BiPAP devices are not "prosthetic devices" under former RCW 82.08-.0283(4)(a) (2004) (unless they were battery-powered, none of which Respiratory Care sold between July 1, 2004, and September 2004). Instead, the Department asserts, CPAP and BiPAP devices are "durable medical equipment," which are subject to sales tax. Br. of Resp't at 7 (quoting RCW 82.08.0283(4)(b)). We agree with the Department.

¶46 The Department relies primarily on the Streamlined Sales and Use Tax Agreement (SSUTA).[25] When the legislature adopted the statutory definition of "prosthetic devices," it also announced, as part of the same legislation:

(1) It is the intent of the legislature that Washington join as a member state in the [SSUTA] referred to in chapter 82.58 RCW. The agreement provides for a simpler and more uniform sales and use tax structure among states that have sales and use taxes. The intent of the legislature is to bring Washington's sales and use tax system into compliance with the agreement so that Washington may join as a member state and have a voice in the development and administration of the system, and to substantially reduce the burden of tax compliance on sellers.

(2) This act does not include changes to Washington law that may be required in the future and that are not fully developed under the agreement. These include, but are not limited to, changes relating to online registration, reporting, and remitting of payments by businesses for sales and use tax purposes, monetary allowances for sellers and their agents, sourcing, and amnesty for businesses registering under the agreement.

---

[25] The Streamlined Sales Tax Governing Board Inc., comprising delegates from a majority of states, adopted the SSUTA on November 12, 2002 and amended it on November 19, 2003, and again on November 16, 2004. *See Streamlined Sales and Use Tax Agreement*, STREAMLINED SALES TAX GOVERNING BD., INC. (Dec. 13, 2010), http://www.streamlinedsalestax.org/uploads/downloads/Archive/SSUTA/SSUTA%20As%20Amended%2012_13_10.pdf. Thus, the November 19, 2003 version of the SSUTA was in effect when the legislature joined the SSUTA on July 1, 2004.

(3) It is the intent of the legislature that the provisions of chapters 82.08 and 82.12 RCW be interpreted and applied consistently with the agreement.

LAWS OF 2003, ch. 168, § 1.

¶47 The SSUTA defines "prosthetic device" as

a replacement, corrective, or supportive device including repair and replacement parts for same worn on or in the body to:

A. Artificially replace a missing portion of the body;

B. Prevent or correct physical deformity or malfunction; or

C. Support a weak or deformed portion of the body.[26]

¶48 The Department also cites the SSUTA's Governing Board Rule 327.3, which provides:

Member states enacting *product-based exemptions* for defined healthcare products or utilizing the defined healthcare terms in entity or use based exemptions shall include all products within each defined term unless specific exceptions are provided for in the definition. The attached chart, (Appendix A) which is not an all inclusive list of all products within each defined term, is *the placement of products within the correct defined healthcare term* included in Part II of the Library of Definitions. *Each member state shall utilize* the defined terms and *the placement of products within each of the defined terms* if a member state adopted any of the healthcare definitions contained in Part II of the Library of Definitions. Where a product is not included in the list, member states shall use the list as guidance in placement of products within the defined terms.[27]

¶49 The Department then points out that a "Health Care Item List Addendum" classifies "C.P.A.P.—Not worn" as "durable medical equipment," while listing "C.P.A.P.—Worn"

---

[26] *Streamlined Sales and Use Tax Agreement, supra*, at 152-53.

[27] *Rules and Procedures*, STREAMLINED SALES TAX GOVERNING BD., INC. 31 (Dec. 13, 2010) http://www.streamlinedsalestax.org/uploads/downloads/Rules/Governing%20Board%20Rules%20_%20as%20amended%2012_13_10.pdf. The SSUTA's Rules and Procedures document contains Governing Rule 327.3 under a section entitled "Requirements Each State Must Accept to Participate." *Id.* at 2.

as "prosthetic device."[28] The SSUTA defines "durable medical equipment" as

> equipment including repair and replacement parts for same, but does not include "mobility enhancing equipment," which:
>
> A. Can withstand repeated use; and
>
> B. Is primarily and customarily used to serve a medical purpose; and
>
> C. Generally is not useful to a person in the absence of illness or injury; and
>
> D. Is not worn in or on the body.[29]

The SSUTA also lists "[o]xygen delivery equipment," "[k]idney dialysis equipment," and "[e]nteral feeding systems" as items that member states may exclude "from the product definition of 'durable medical equipment.' "[30]

¶50 Effective July 1, 2004, the legislature enacted a similar definition of "durable medical equipment":

> [E]quipment, including repair and replacement for durable medical equipment, but does not include mobility enhancing equipment,[31] that:
>
> (i) Can withstand repeated use;
>
> (ii) Is primarily and customarily used to serve a medical purpose;
>
> (iii) Generally is not useful to a person in the absence of illness or injury; and
>
> (iv) Does not work in or on the body.

LAWS OF 2003, ch. 168, § 409(3)(b).

---

[28] Br. of Resp't at 13 & n.9 (citing *Health Care Item List Addendum (Appendix M)*, STREAMLINED SALES TAX GOVERNING BD., INC. 1 (Jan. 29, 2007), http://www.stream linedsalestax.org / uploads / downloads / Appendix_M__Health_Care_Items_Addend um_List_2_5_07_(2).pdf).

[29] *Streamlined Sales and Use Tax Agreement, supra,* at 149.

[30] *Streamlined Sales and Use Tax Agreement, supra,* at 150.

[31] In 2004, the legislature deleted the phrase "but does not include mobility enhancing equipment." LAWS OF 2004, ch. 153, §101(4)(b).

¶51 We agree with the Department that the post-July 1, 2004 statutory definition of "prosthetic devices" under former RCW 82.08.0283 (2004) does not include CPAP and BiPAP devices. It is clear that the legislature intended to follow the SSUTA when it added a statutory definition of "prosthetic devices," effective July 1, 2004. *See* LAWS OF 2003, ch. 168, § 1. The SSUTA makes a distinction between "C.P.A.P.—Not worn" as "[d]urable medical equipment," while listing "C.P.A.P.—Worn" as a "[p]rosthetic device."[32]

¶52 Thus, we hold that (1) the post-July 1, 2004 statutory definition of "prosthetic device" under former RCW 82.08.0283(4)(a) (2004) did not include the CPAP and BiPAP devices that North Central sold during the applicable tax period after July 1, 2004; and (2) Respiratory Care is not entitled to a tax refund because its sales of CPAP and BiPAP devices from January 2001 through September 2004 did not qualify for a sales tax exemption. We affirm.

PENOYAR, C.J., and QUINN-BRINTNALL, J., concur.

---

[32] *Health Care Item List Addendum (Appendix M)*, *supra*, at 1.